MARTIN C. WALTON *et al.*

*v.*

SALLY M. FOLLANSBEE *et al.*

*Filed at Ottawa November 9, 1896—Rehearing denied March 12, 1897.*

1. EVIDENCE—*when abstract of title is inadmissible under the Burnt Records act.* An abstract of title is incompetent, under section 24 of the Burnt Records act, (Laws of 1887, p. 261,) to prove that a deed was recorded prior to the destruction of the records, unless the deed itself is lost or destroyed.

2. SAME—*parol evidence is inadmissible to vary the terms of an unambiguous express trust.* Where the language used in a trust deed is sufficiently clear to enable the court to ascertain the terms and duration of the trust created, parol evidence is inadmissible to vary or explain its terms or limitations.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This case was before us in 1889, and will be found reported in 131 Ill. 147. Upon being remanded to the circuit court the suit was dismissed as to plaintiff VanPelt, and again tried. One of the attorneys for the plaintiffs made affidavit that both parties claimed title through a common source—Nelson C. Walton. The death of Eliza Ann Walton was proved, and that the plaintiffs, with the daughter Josephine, (since deceased,) were her only children.

The trust deed from Nelson C. Walton to George Walton and Margaret E. Young, dated March 24, 1858, and copied at length in the former opinion, was introduced in evidence, and from the endorsement thereon it appeared it was not filed for record in the recorder's office of Cook county until November 23, 1891. Plaintiffs offered to show, by an abstract of title made prior to the destruction of the records of the county, that it had in fact been recorded May 1, 1858, but the evidence was, on objection of counsel for the defendants, excluded as incompetent. Plaintiffs then introduced the other trust

deed referred to in our former opinion, dated October 12, 1859, in which Nelson C. Walton, George W. Walton, Austin Walrath and Margaret E. Walrath (wife of Austin Walrath, formerly Young,) were parties of the first part, and Isaac G. Wickersham and Sidney Abel parties of the second part, and Eliza Ann Walton party of the third part, conveying the lot in question.    That deed recites:

"Whereas, by deed dated March 24, 1858, and recorded in book 152, page 236, said Nelson C. Walton did convey to said George W. Walton and Margaret E. Young certain real estate in trust for the use and benefit of said Eliza Ann Walton; and whereas, it was also provided in said deed that said trustees should, at any time, execute such conveyance of said real estate as the said third party should, in writing, request:  Now, therefore, in consideration of the premises, the said Eliza Ann Walton requesting the execution of this conveyance by her signature hereto affixed, in pursuance of the provisions of said deed and one dollar, the said first parties have sold, released and conveyed to said second parties, and to the survivor of them, and to the heirs or assigns of such survivor, lot 44, block 4, Fort Dearborn addition to Chicago, (and other property,) to have and to hold to said parties of the second part, and to the survivor of them, and the heirs or assigns of such survivor, forever in trust, and for the following purposes," etc.

The remaining part of the deed is a literal copy of the one of March 24, 1858, except in providing that the parties of the second part shall execute leases, etc., instead of the words "leases, conveyances, contracts and agreements in reference to said premises," the language "leases deeds, mortgages, conveyances, contracts or agreements *embracing or affecting* said premises" is used.    Both deeds contain the declaration, "and in case of her decease before said Nelson C. Walton the property above described shall descend to and vest in her children, and in default of children surviving, shall revert to said Nelson C. Wal-

ton. In case of the decease of said Nelson C. Walton before said party of the third part the said premises shall become the absolute property of said party of the third part, and the trust lien created shall thereupon cease and determine." The last named deed was filed for record January 5, 1860. The defendants offered in evidence the deeds mentioned on page 154 of the Illinois Supreme Court Report above referred to.

Instructions asked by the parties were refused and others given by the court of its own motion.

HARVEY B. HURD, FREDERICK C. HALE, and E. P. HILLIARD, for appellants.

T. A. MORAN, and T. J. WALSH, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The first question presented for decision is, did the circuit court err in excluding the offered evidence to prove that the deed of 1858 was recorded? The abstract, if competent at all, was made so by section 24 of the Records act. (2 Starr & Curtis, p. 2002.) But that section only provides for the introduction of an abstract of title in evidence when it shall be stated, on oath, that the originals of any deeds or other instruments in writing, etc., "are lost or destroyed or not within the power of the party to produce the same, and that the records thereof are destroyed by fire, or otherwise." No such preliminary proof was or could have been made here, because the original deed was in the possession of plaintiffs and offered in evidence. It was not error to exclude the offered evidence.

There is greater force in the contention that defendants were chargeable with notice of that deed, and the record thereof, by the recital contained in the one of October 12, 1859, under which they claim. The only ground upon which it is claimed they are not so chargeable is,

that the recital does not sufficiently identify that deed. When the whole recital is considered there is but little ground for conjecture that another deed may have been referred to.

But in our view neither of the foregoing questions is of controlling importance in the decision of the case. It will be seen from the above statement that plaintiffs did not rely wholly upon the original deed, but also offered in evidence the one of October 12, 1859. Among the instructions asked by them and refused were the following:

7. "The jury are instructed that neither Nelson C. Walton, or either set of trustees, or Mrs. Walton, together or alone, had the right, under the deeds in evidence, to convey away the fee of the lot in question as against the rights of the plaintiffs in this case."

9. "The jury are instructed that the effect of the deed from Isaac G. Wickersham, Sidney Abel, Nelson C. Walton, Eliza Ann Walton and Josephine M. Walton was to vest in their grantee, Elbridge G. Walton, and his grantees, only an estate for the life of Eliza Ann Walton, and upon her death all the rights derived by them under such deed to the lot in question came to an end."

By the instructions given the jury were told that the plaintiffs based their claim upon the deed of March 24, 1858, and the defendants theirs upon the one of October 12, 1859, and that "the defendants, or the parties under whom they claim, * * * have no actual or constructive notice of the said first deed of March 24, 1858, except in so far as the conditions and provisions contained therein are recited in the second deed dated October 12, 1859, claiming that the said deed of March 24, 1858, was never recorded among the records of this county until 1891, and several years after this suit was instituted."

After explaining that parol evidence had been received as to the value of the property, its rental value, its value as a life estate, the financial condition of the parties, their whereabouts, and other surrounding cir-

cumstances, for the purpose of enabling the court to construe the deeds, and that the same were not to be considered by the jury, instructions were given construing the first deed (March 24, 1858,) in conformity with our decision *supra*, but the jury were instructed that if they believed, from the evidence, that that deed was not recorded "before the date of the record of said deed of December 1, 1861, to Elbridge G. Walton, and that the defendants, or those under or through whom they claim, had no actual or constructive notice thereof, then the defendants are not bound by said first deed, except in so far as the recitals thereof appear in the said second deed dated October 12, 1859, and the deed of December 1, 1861, conveyed the fee simple title to the lot in controversy to said Elbridge G. Walton, and the deed from the said Elbridge G. Walton and wife to Martin Clifford conveyed to him a good and absolute title in fee simple."

Clearly the deed of October 12, 1859, does not materially differ from that of March 24, 1858, as to the legal estate vested in the trustees. Providing in it that the parties of the second part should deed and mortgage the premises at the request of the party of the third part added nothing to the same provision in the former deed. "Such conveyances," as used in both, clearly includes both deeds and mortgages. We said in the former decision (131 Ill. 157): "In considering the provisions of said deed for the purpose of determining the scope and extent of the trust, it seems too plain for argument that the parties intended to create a trust which should subsist only during the joint lives of Nelson C. Walton and his wife. This is evident from language which is too plain to require construction. It was expressly provided that in case of the death of Eliza Ann Walton leaving her husband surviving her, the property in said deed described should descend to and vest in her children, or in default of children, that it should revert to her husband, the grantor. It was further provided that in case of the

death of Nelson C. Walton before the death of his wife said premises should become the absolute property of his wife, and that said trust should thereupon cease and determine. It is true the instrument requires the trustees to execute such leases, conveyances, contracts and agreements in reference to said premises, or any part thereof, as Mrs. Walton should, in writing, request; but this clause must be construed with proper reference to the other provisions above mentioned. A deed should be so construed, if possible, as to give force to all its provisions, and there is no difficulty in construing the clause last mentioned so as to give it effect and at the same time give full force and effect to all the other provisions of the deed. The 'leases, conveyances, contracts and agreements' there referred to must obviously be construed to mean leases, conveyances, contracts and agreements of and concerning the estate which was made the subject matter of the trust, viz., an estate in the lots conveyed for the joint lives of the grantor and his wife. Such construction does no violence to the language employed, and makes said clause harmonize perfectly with those clauses of the deed which provide for the disposition of the property in the event of the death of either the grantor or his wife. If, on the other hand, the deed is so construed as to give the trustees power and make it their duty to convey the fee, or any interest extending beyond the joint lives of the grantor and his wife, the disposition attempted to be made of the property upon the death of either of said parties would be rendered nugatory and of no effect."

Can it be seriously contended this language is less applicable to the deed of 1859 than that of 1858, there under consideration? The language in the one is literally that of the other. To say, therefore, that the trustees could convey the fee under the last deed but could not under the first, would be absurd.

An attempt is made by counsel for appellees to escape this dilemma and avoid the force of the former decision by insisting that the parol evidence offered upon this trial as to the value of the property and as to the circumstances and surroundings of the parties justified the court in construing the conveyance of October 12, 1859, as vesting the fee in the trustees, with power to convey the same. If that were true it would be a matter of no consequence which deed appellees claimed under. If the parol evidence authorized the construction of the second deed placed upon it, why not apply the same evidence to the first, and give it the same construction? In the first place, parol evidence was incompetent to vary or change the express terms of the deed. We said before, speaking of the declaration of the trust for the joint lives, only, "this is evident from language which is too plain to require construction." The trust is an express one, and to be valid must be manifested and proved by some writing. (1 Starr & Curtis' Stat. sec. 9, chap. 59, p. 1200.) We have found the language used by the grantor sufficiently clear to enable us to ascertain the terms and duration of the trust declared. There is no theory, then, upon which the parol testimony introduced can be held competent. (1 Perry on Trusts, sec. 76.) Proof of circumstances surrounding the parties and the property could not be received to vary the terms, conditions and limitations of the deed, but as to these the instrument must speak for itself. (2 Parsons on Contracts, 549.) But if it were otherwise, we do not think the contemporaneous facts and circumstances proved are so far inconsistent with the language of the instruments as to manifest a different intention from that there expressed.

In this view, the court below erred in refusing to give the seventh and ninth instructions asked by the plaintiffs, and also, in effect, instructing the jury that unless defendants were chargeable with notice of the first deed, the deed from "the said Elbridge G. Walton and wife to

Martin Clifford conveyed to him a good and absolute title in fee simple."

The judgment of the circuit court must accordingly be reversed, and the case will be remanded, with instructions to that court to proceed in conformity with the views here expressed.       *Reversed and remanded.*