(No. 17486.—Decree affirmed.)
LYDIA BERGMAN et al. Appellants, vs. GODFREY LAMBERT BERGMAN et al. Appellees.

*Opinion filed October 28, 1926.*

1. TRUSTS—*when husband cannot defeat power of sale on the ground that he did not join in trust agreement.* Where husband and wife have joined in a warranty deed of the wife's property to their son but the deed is, in fact, a conveyance in trust, the fact that the husband does not join in a collateral trust agreement by the wife giving the son power to sell the property whenever he deems it to the best interest of the estate will not enable the husband to defeat a proper exercise of such power, as the wife, being the owner of the fee, was the creator of the trust and the only necessary party to the trust agreement.

2. SAME—*parol evidence not admissible to alter terms of trust agreement.* Where the written portion of a trust agreement is sufficient to manifest an express trust but discloses an incompleteness in other respects, oral testimony may be heard to supply what is missing, but where the instrument appears to be complete in its provisions, parol evidence is not admissible to vary or alter the terms of the agreement.

3. SAME—*mere absence from State is not cause for removal of trustee.* Establishing a permanent residence abroad is good cause for the removal of a trustee, but mere absence from the State does not, of itself, constitute sufficient cause for removal.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

JOSEPH BONNEFOI, and JAMES S. WIGHT, for appellants.

THEODORE JOHNSON, for appellee Victor L. Geispitz; ZIV, LOOMIS & SILVERTRUST, for other appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county dismissing appellants' bill of complaint for an accounting and the appointment of a new trustee and ordering specific performance in favor of appellee Victor L. Geispitz on the supplemental and cross-bills.

Lydia Bergman was the owner of two lots, and a two-story frame building thereon, located at 857-859 Diversey parkway, Chicago. The upper flat was occupied by her and her husband, John Bergman. The lower portion was rented for $30 a month. The property was encumbered for $2000. The Bergmans have three children, Godfrey Lambert Bergman, a son, and Alma Marie Wichman and Lydia Christine Bergman, daughters. Godfrey was desirous of removing the old building from the premises and of constructing a modern apartment building. He talked the matter over with his mother and it was decided to construct a new building. The old building was removed to another location owned by John Bergman and was afterwards used by him and his wife as their residence. Prior to the commencement of construction work Lydia and John Bergman conveyed the lots to Godfrey, the consideration expressed in the deed being $10. Although the deed was the usual form warranty deed, the conveyance was nevertheless in trust to Godfrey for the purpose of enabling him to finance, construct, manage and control the property. No declara-

tion of trust was made contemporaneously with this conveyance. Later, on August 14, 1916, a trust agreement was entered into between Lydia Bergman and Godfrey, which recited that the above mentioned warranty deed had been executed but that the premises were, in fact, conveyed to Godfrey not for his own use but upon certain trusts, among which are, first, that he will hold, manage and control the premises, collect rents, pay taxes and other charges, procure loans, pay necessary commissions, provide a sinking fund from the rental income and make disbursements of the net proceeds; second, that he will hold the premises and income for the use and benefit of Lydia Bergman during her natural life and at her death pay John Bergman one-third of the net income and the remainder to the three children, and after the death of Lydia and John Bergman divide all of the net income equally among the three children; third, that he will continue to manage and control the premises until the second mortgage has been fully paid; fourth, that he will make an ultimate conveyance in fee to the three children or their heirs; fifth, that he shall have power to sell and convey the premises at his discretion and re-invest the proceeds in other lands in the State of Illinois or in notes secured by first mortgage or trust deed on real estate in Cook county, Illinois. After the date of the warranty deed, and before the date of the trust agreement, in order to obtain money for building purposes Godfrey borrowed $28,000, to secure which he gave a deed of trust to the Foreman Bros. Banking Company. He also borrowed $8300 from his wife, Miriam, to secure which a second deed of trust was made and delivered to Gideon S. Thompson as trustee. The execution of these trust deeds is set forth in the trust agreement.

The contract price for the building was about $38,000. This amount did not include architect's fees and a number of other substantial factors in building construction. The amount of money raised by means of the two trust deeds

was not sufficient to complete the building, and John Berg-man contributed about $5000 and Godfrey obtained additional small loans from his wife. About the time the construction work began Godfrey moved from Chicago to Honolulu, where he resided for several months. He then moved to Los Angeles, California, where he has since resided. Before leaving Chicago, however, he placed the construction work in charge of Buhmann & Son, a Chicago real estate firm. The money obtained from Foreman Bros. Banking Company was paid out on vouchers through that bank. The other money raised and contributed for building purposes was turned over to Buhmann & Son and paid out by them on vouchers. John Bergman was authorized to sign the vouchers and agreed to do so, as well as to do certain other things connected with the construction, but for some reason not clear from the record he failed, after a time, to do the things which were incumbent upon him. The building was completed in proper time and has been successfully and profitably operated. No complaint whatever appears to have been made by any of the parties in interest of Godfrey's methods or management until some time in 1924, when he entered into negotiations for the sale of the apartment building and premises to the cross-complainants, Louis J. Geispitz and Eugenie Geispitz, and then the disagreement appears to have arisen over the advisability of making a sale at $80,000. Godfrey contended that it was a good price and that good business dictated it should be accepted. His parents contended that the price was inadequate and therefore should not be accepted. Notwithstanding the contentions, Godfrey concluded his negotiations with Louis J. and Eugenie Geispitz and entered into a contract for sale of the premises for $80,000. He accepted a payment of earnest money in the sum of $2500. It is admitted that at the time this contract was executed neither Louis J. nor Eugenie Geispitz had any notice that Godfrey held the title to the premises in trust, but, on the

contrary, were of the belief in good faith that he was the owner in fee simple. Subsequent to the execution of the contract of sale appellants filed the original bill in this case, in which they charged that Godfrey has failed to account for approximately $12,000 of rents collected by him; that the premises were worth at least $100,000; that the price mentioned in the contract of sale is inadequate; that such contract should be canceled and set aside as a fraud upon complainants; and that Godfrey is a non-resident of the State of Illinois and is desirous of converting the premises into cash and removing the proceeds received by him to the State of California, in violation of the provisions of the trust agreement.

We have carefully examined the master's report of testimony in this case and feel that the findings of fact made by him are well supported by the proofs. So far as receipts from rentals are concerned, the testimony shows that a full, detailed and complete account of the operation of the building for a period of more than eight years has been exhibited; that the account was kept by Buhmann & Son and was available to appellants for inspection at any time, and that Godfrey has made proper disbursements of the funds. No item has been challenged either for fraud or error. As to the building account, appellants knew at the time of the construction what the contract price was and what things were not included in the contract but which were essential to building construction. They knew $2000 of the $8300 obtained from Miriam Bergman was used to pay off an existing mortgage. The testimony discloses they had an intimate and accurate knowledge of everything connected with the construction of the premises. Theodore R. Christian, who was associated with Buhmann & Son and was the general fiscal agent in the matter of construction of the building and disbursement of the money, was dead when the suit was brought. The architect who had general supervisory powers over the construction work was also

dead. In view of the situation we feel that the chancellor was right in denying the prayer for an accounting.

The evidence tends strongly to sustain the finding that $80,000 is a fair and adequate price for the premises. At any rate, it is clear that the price is not sufficiently inadequate to warrant us in disturbing the findings of the chancellor, which are supported by the master's conclusions of fact. Under the fifth provision of the trust agreement Godfrey Bergman was vested with full power to sell and convey the land whenever he deemed it to be for the best interest of the trust estate, but appellants contend that this power does not express the true agreement between the creators of the trust and the trustee, for the reason, as they claim, the instrument was not executed by one of the creators of the trust, and hence parol evidence may be heard to show what the actual agreement was. They claim that John Bergman was a necessary party to the creation of the trust and did not sign the agreement. The parol evidence introduced, and which it is insisted is competent, was to the effect that it was understood and agreed between Godfrey and his parents that he would not sell or dispose of the property during the lives of his parents without their consent. The inquiry then is, Was John a creator of the trust and therefore a necessary party to the trust agreement? He was not an owner in fee. The only interest he had in the premises was that of homestead and dower. These he could release, without the payment of any consideration to him, by executing and acknowledging a deed in accordance with the statute. His wife was the owner in fee and was the creator of the trust. The agreement entered into between her and her son, under the circumstances of this case, bound all concerned, and under it the trustee had a right to sell the property if he deemed it for the best interest of the estate. There is nothing in the record to indicate that he acted in bad faith, but the proof tends to show that in all things he acted with prudent busi-

ness foresight, and that his conduct has inured measurably to the benefit of his parents and the other *cestui que trustents.*

Lydia Bergman testified that although the trust agreement was delivered to her immediately after it was executed and was kept by her at all times thereafter, she never knew its contents and relied on Godfrey's alleged promise that he would not sell the property without her consent. The evidence shows that she was an intelligent woman, of considerable business experience and some travel. She could read and write the English language well. Under the circumstances she cannot contradict the terms of the agreement by parol testimony. Where the written portion of a trust agreement is sufficient to manifest an express trust but discloses an incompleteness in other respects, oral testimony may be heard to supply what is missing, (*Myers* v. *Myers,* 167 Ill. 52; *Fox* v. *Fox,* 250 id. 384;) but where the instrument appears to be complete in its provisions parol evidence is not admissible to vary or alter the terms of the agreement. *Walton* v. *Follansbee,* 165 Ill. 480.

It is insisted by appellants that specific performance of the contract of sale to Victor L. Geispitz, assignee of Louis J. and Eugenie Geispitz and complainant in the supplemental bill, should not be enforced, because he will not be injured if the earnest money, with interest, is returned. We can conceive of no equitable ground upon which specific performance can be denied. The trustee had a right to convey the premises. It appears that he acted not only in good faith but with sound business judgment in making the contract with Louis J. and Eugenie Geispitz. They acted in good faith and without knowledge of defect or infirmity of title. Their assignee stands ready, able and willing to comply with the terms of their contract. Neither the creator of the trust nor any of the *cestuis* have been injured.

Establishing a permanent residence abroad has been held to be good cause for the removal of a trustee, but mere

absence from the State does not, of itself, constitute sufficient cause for removal. *Lill* v. *Neafie,* 31 Ill. 101 ; 32 Eng. Ch. 101.

The decree of the circuit court of Cook county was correct, and it is affirmed.

*Decree affirmed.*