THOMAS LORD, Trustee, *vs.* NELLIE HURD COMSTOCK *et al.*—(MARGARET B. LORD *et al.* Appellants, *vs.* EDA HURD LORD, Appellee.)

*Opinion filed June 16, 1909.*

1. WILLS—*rule in Shelly's case must control though against the testator's intention.* The rule in *Shelly's case* is a rule of law and not one of construction or intent, and it must control even though it be against the testator's manifest intention.

2. SAME—*rule in Shelly's case requires that estate of ancestor and heirs be of same quality.* The rule in *Shelly's case* does not apply unless the estate limited to the ancestor and the subsequent estate limited to the heirs are of the same quality,—that is, both legal or both equitable.

3. SAME—*estate of trustee must be commensurate with trustee's powers.* A trustee under a will acquires whatever estate is needed to enable him to accomplish the purposes of the trust, and if the duties devolving upon him by the terms of the trust are such as can only be performed if the trustees are clothed with the legal title in fee, then they are vested with such title.

4. SAME—*estate of trustee does not depend upon use of words of inheritance.* The estate taken by a trustee must be determined not merely from the fact that words of inheritance in the trustee are or are not used, but from the intention of the testator as determined by the scope and extent of the trust upon which the estate in the trustee is based.

5. SAME—*when trustees take title in fee simple.* Trustees under a will take the legal title in fee, where it is not only devised to them in general terms, but all other provisions of the will, as well as the nature of the trust, plainly indicate that the testator intended to invest the trustees with the full legal title, and not merely a chattel interest or a legal title less than a fee.

6. SAME—*if entire legal title is in trustees the interests of the beneficiaries must be equitable.* Where the entire legal title in fee is vested in the trustees under a will the interests of the beneficiaries must be equitable, and if the prior estate is limited to the first beneficiary for life and the subsequent estate is limited to her "heirs" the rule in *Shelly's case* applies as to the real property, and the first beneficiary takes an equitable fee.

7. SAME—*when the testator's daughters take an equitable fee.* Under a will investing trustees with the full legal title to the residue of the testator's estate for the payment of debts and production of income, which income "shall be paid in equal shares to my

daughters [naming them] during their lives, and upon the death of either her share or income shall go to her heirs until one-half of the principal of my estate, as it shall then be, can be made over to them," the trustees taking such time as they think best in making division of the principal, and "upon the death of the other of my daughters the other half shall go to her heirs," the daughters take an equitable fee in the real estate under rule in *Shelly's case.*

8. SAME—*rule in Shelly's case does not apply to gifts of personal property.* The rule in *Shelly's case* should not be applied to a gift of personal property even though the gift is by a residuary clause disposing of both real and personal estate, and even though, as to the real estate, the rule in *Shelly's case* must be applied.

9. SAME—*when trustees have power to pay over part of principal.* A clause in a will giving the trustees, who hold the full legal title, power to "pay over to my said daughters, or either of them, on account of their shares of interest in the estate, in money or in real or personal property, such amounts as they shall think best, the other daughter consenting thereto in writing," authorizes the trustees, if they think best, to pay over a part of the principal to either daughter, the other consenting.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

This was a bill filed by Thomas Lord, one of the trustees under the will of Harvey B. Hurd, deceased, praying, among other things, that the rights and duties of the trustees and the rights and interests of testator's daughters and their heirs be determined.

January 20, 1906, Harvey B. Hurd, of Evanston, Illinois, departed this life testate, leaving him surviving Eda Hurd Lord and Nellie Hurd Comstock his only heirs-at-law and next of kin. The material parts of his will as bearing on the questions to be decided are as follows:

"I give, devise and bequeath to William S. Young and Thomas Lord * * * all the estate, both real and personal, of which I may die possessed or in anywise entitled, upon the following trusts: * * *

"*Third*—Unless I shall before my death make some other disposition of lot 2 in James B. Gavin and others' subdivision, * * * my said trustees shall manage, rent

or otherwise manage said premises and pay over to Mrs. Louise W. Percy the net income thereof during her life. * * * If my said trustees shall think best they may make over the fee of said premises or the whole or any part of the avails of the sale thereof. * * *

"*Fourth*—My trustees shall take the possession and management of the residue and remainder of my estate for the payment of my debts and the production of income, whether (which) income, after the payment of all expenses on account of said estate, shall be paid in equal shares to my daughters, Eda Hurd Lord and Nellie Hurd Comstock during their lives, and upon the death of either her share or income shall go to her heirs until one-half of the principal of my estate, as it shall then be, can be made over to them, the said trustees taking such time as they shall think for the best interest of all concerned in making division of said principal. Upon the death of the other of my daughters the other half shall go to her heirs.

"*Fifth*—My said trustees shall have full power and authority to sell, convey, mortgage, lease or otherwise dispose of any or all of my real and personal estate at their discretion, and invest and re-invest the proceeds thereof, and may improve any of my real estate as they may think for the best interest of the beneficiaries, and they may pay over to my said daughters, or either of them, on account of their shares of interest in the estate, in money or in real or personal property, such amounts as they shall think best, the other daughter consenting thereto in writing."

The will was dated May 2, 1903. Later, on June 13, 1904, Mr. Hurd made a codicil thereto, among the provisions of which tending to throw light on the question under discussion are the following:

"In addition to the powers conferred upon my said executors and trustees, they are authorized and empowered to acquire the life estate of the said Louise W. Percy, or to sell to her the remainder created by my said will. They

are also empowered  *  *  *  to make over to her, in fee, the whole or any portion of the real estate hereinbefore described, or the proceeds of the same,  *  *  *  or to make over the same to any person or persons and upon such trusts as she may in writing direct.  Such conveyance to her by my trustees to be free and clear of all claims and demands.  *  *  *

"I do hereby give and devise to my niece, Annie H. Lyons, for and during her natural life, that part of lot 18,  *  *  *  upon her death the same to my executors upon the same trusts as the residue and remainder of my estate.  My said executors are given power and authority to join the said Annie H. Lyons in the sale and conveyance of said premises, or to dispose of the remainder thereof to her or to any other person for such price or upon such consideration and terms as they shall think best."

The will was filed in the probate court of Cook county February 20, 1906.  Thomas Lord and William Sanborn Young, who were named as executors, qualified as such, the estate was fully administered, all claims paid and the final report of the executors was approved April 20, 1907, by the probate court of Cook county and they were discharged. It appears that thereafter the executors, as trustees, took possession of all the personal property belonging to the estate and went into possession of all the realty of which the testator died seized, and thereafter John Comstock became an additional trustee, and since that time said trustees have administered the trust under the terms of said will and are now in possession of said estate.  Said estate consisted of personal property, including notes, mortgages, stock, bonds and chattel property, of the value of $57,479.62, real estate situated in Cook county, Illinois, both vacant and improved, of the value of $316,055, and real estate situated in Lake county, Illinois, of the value of $2400.

After a hearing in the circuit court the chancellor found, among other things, that the fourth and fifth clauses of the

will gave rise to reasonable doubts as to the intent of the testator, both as to the character of the estate devised to his two daughters and the powers conferred upon the trustees, and that these doubts were of such a character as to entitle complainant to ask the aid of a court of chancery for their construction; that the proper construction to be placed upon the fourth clause of said will is, that the testator devised to his two daughters an equitable life estate in the entire residue and remainder of his estate after providing for the specific legacies mentioned in his will, and an equitable remainder in fee simple, upon the death of his two daughters, to their respective heirs, and that by operation of the rule in *Shelly's case* the life estate devised to his two daughters and the remainder to their respective heirs coalesce and create an equitable estate in fee simple in the said two daughters, respectively, and that by reason thereof the said two daughters were at the death of the testator, and are now, vested with an equitable estate in fee simple in all the residue of his property now in the hands of the said trustees, except the estate devised by the third clause of his will and the first and last clauses of the codicil, and that it is the duty of said trustees to divide the estate devised by the fourth clause of said will into two equal portions and to make over and convey one portion to each of the daughters upon her request; that the proper construction to be placed upon the fifth clause of the will is, that said trustees may pay to said daughters the income to which they are entitled under the fourth clause, or a part thereof, in money or in real or personal property, in such amounts as the trustees may think best, the other daughter consenting thereto in writing, but that they may not, under the powers therein granted, transfer or convey to either of the said daughters, with the consent of the other thereto, any part of the principal of said trust estate.

Appellants have assigned errors to that part of the decree finding that the daughters, under the rule in *Shelly's*

*case,* took an estate in fee in the remainder of the estate after the payment of certain legacies. Appellee, Eda Hurd Lord, has assigned cross-errors as to the construction placed upon the fifth clause of the will.

THOMAS TAYLOR, JR., (HERBERT A. LUNDAHL, of counsel,) for appellants:

The rule in *Shelly's case* is law in this State. *Baker* v. *Scott,* 62 Ill. 86; *Brislain* v. *Wilson,* 63 id. 173; *Pease* v. *Davis,* 225 id. 408.

The rule is not apt when the limitations differ in quality,—that is, where one is legal and the other equitable. *Baker* v. *Scott,* 62 Ill. 86; *Papillon* v. *Voice,* 2 P. Wms. 471; *Glover* v. *Condell,* 163 Ill. 566.

A correct analysis of the cases shows that the rule applies only to change the remainder to the heirs into a remainder to the one receiving the life estate, so that he has a life estate with a remainder to himself. Jarman on Wills, (5th ed.) 332; *Lehndorf* v. *Cope,* 122 Ill. 317.

A mere power of sale given to the trustees does not imply a fee in them. *Lambert* v. *Harvey,* 100 Ill. 338; *Baker* v. *Scott,* 62 id. 86; *West* v. *Fitz,* 109 id. 435.

The rule in *Shelly's case* does not apply to personalty. *Gross* v. *Sheeler,* 7 Houst. 280; *Bacon's Appeal,* 57 Pa. St. 504; *Glover* v. *Condell,* 163 Ill. 566; Williams on Personal Prop. (3d Am. ed.) 244; *Avern* v. *Lloyd,* L. R. 5 Eq. Cas. 383; *Vogt* v. *Vogt,* 26 App. Div. 46; *Smith* v. *Butcher,* L. R. 10 Ch. Div. 113.

The word "heirs," in case of a bequest of personalty, means the persons who would inherit real estate, and not executors or personal representatives, and so the rule does not apply. *Smith* v. *Butcher,* L. R. 10 Ch. Div. 113.

A devise of real and personal estate to trustees, to receive the income and pay over, in equal portions, to testator's daughters, and the surviving husband of any daughter, for life, and after the death of any daughter and her hus-

240—32

band her portion to be conveyed to her right heirs in fee simple, constitutes a legal remainder to the heirs, and the rule in *Shelly's case* does not apply. *Bacon's Appeal,* 57 Pa. St. 504.

H. H. C. MILLER, and C. G. LITTLE, for appellee:

If land be devised to a trustee and he be directed and empowered to convey it the legal estate necessarily vests in him, and if he is required to convey the fee, the fee must be conferred upon him. *Kirkland* v. *Cox,* 94 Ill. 400; *Aid Society* v. *England,* 106 id. 125; *McFall* v. *Kirkpatrick,* 236 id. 281; *Richardson* v. *Harrison,* 16 Q. B. Div. 85.

The estate to the trustees being the entire fee,—*i. e.,* the legal estate during the life of the two life tenants,—and also the legal inheritance devised to the heirs by way of remainder, the estates to the heirs both of Mrs. Lord and Mrs. Comstock are equitable. *Kirkland* v. *Cox,* 94 Ill. 400; *McFall* v. *Kirkpatrick,* 236 id. 281; *Richardson* v. *Harrison,* 16 Q. B. Div. 85.

The remainder devised to the heirs of the daughter first dying is equitable, because a conveyance by the trustees is expressly directed by the will. *McFall* v. *Kirkpatrick,* 236 Ill. 281.

The remainder devised to the daughter last dying is equitable, and the Statute of Uses cannot operate to make it legal. 25 Am. & Eng. Ency. of Law, (2d ed.) p. 648, sec. 5, note 4; *McFall* v. *Kirkpatrick,* 236 Ill. 281; *Richardson* v. *Harrison,* 16 Q. B. Div. 85.

The rule in *Shelly's case* applies, by analogy, to personal property. 25 Am. & Eng. Ency. of Law, (2d ed.) p. 649, sec. 6, note 4.

Mr. JUSTICE CARTER delivered the opinion of the court:

The chief question involved in this case is whether the rule in *Shelly's case* applies and controls as to the disposition of the property left after the payment of certain lega-

cies.   We shall first discuss this rule as to its application to the real estate and then as to the personal property.

The rule in *Shelly's case* has been frequently held to be in force in this State, and is a rule of law and not of construction or intent.   (*Baker* v. *Scott,* 62 Ill. 86; *Brislain* v. *Wilson,* 63 id. 173; *Butler* v. *Huestis,* 68 id. 594; *Wicker* v. *Ray,* 118 id. 472; *Carpenter* v. *VanOlinder,* 127 id. 42; *Pease* v. *Davis,* 225 id. 408; *McFall* v. *Kirkpatrick,* 236 id. 281; *Ward* v. *Butler,* 239 id. 462; Kales on Future Interests, chap. 3.)   Under these and many other authorities it must be held to be the inflexible rule of law of this State that the rule in *Shelly's case* must control even though against the testator's manifest intent.   It may be well to bear in mind, however, the reasoning of Mr. Justice Elliott in discussing this question in *Allen* v. *Croft,* 109 Ind. 476, in which he states: "It has seemed to many that there is a conflict between the rule declaring that the intention of the testator must govern, and the rule in *Shelly's case;* but the appearance of conflict fades away when it is brought clearly to mind that when the word 'heirs' is used as a word of limitation it is treated as conclusively expressing the intention of the testator.   Where it appears that the word was so used, the law inexorably fixes the force and meaning of the instrument.   If once it is granted that the word was used in its strict legal sense, nothing can avert the operation of the 'rule in *Shelly's case,* so that the inquiry is, was the word used as one of limitation?   The only method in which an instrument employing the word 'heirs' can be shown not to be within the rule is by showing that the word was not employed in its strict legal sense."   This was quoted with approval by Mr. Justice Scholfield in *Carpenter* v. *VanOlinder, supra.*

The rule in *Shelly's case,* as stated in *Baker* v. *Scott, supra,* is, that "where the ancestor takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, either in

fee or in tail, the heirs are words of limitation of the estate and not words of purchase." It has also been held by this court that the rule cannot apply unless the estate limited to the ancestor and the subsequent estate limited to the heirs shall be of the same quality,—that is, both legal or both equitable,—because if the prior estate is equitable or a trust estate and the subsequent estate is a legal one, the two do not unite as an estate of inheritance in the ancestor. *Baker* v. *Scott, supra; Glover* v. *Condell,* 163 Ill. 566, and authorities cited; *McFall* v. *Kirkpatrick, supra.*

Counsel for appellants do not in any way disagree with the authorities heretofore cited as to the rules of law laid down, but contend that the estates which must coalesce in the case at bar, if the rule in *Shelly's case* does apply, are not of the same character; that the testator devised an equitable life estate in an undivided half interest to each of the daughters and a contingent legal remainder in such interest to the heirs of each daughter. We are disposed to hold that "there are, strictly speaking, no equitable reversions or remainders. The so-called reversions are resulting trusts, and a remainder implies the presence of seizin and tenure, which are conceptions foreign to equitable interests." (Gray on Rule Against Perpetuities,—2d ed.—secs. 116, 324; Kales on Future Interests, sec. 129.) However, in questions of this kind the authorities usually discuss these future equitable interests the same as if they were legal, and beyond question the same principles control whether we treat them as "trusts" or "remainders." The decision of the question as to whether the interest left by the will to the heirs of each daughter is equitable or legal must depend upon the character of the trust created by this will.

Plainly, under the will the trustees were vested with the legal title in all of testator's property, both real and personal. They were given an estate in the land, and not a mere power over it. Is that interest an estate for life, for years or in fee? The estate of a trustee in the real estate

which is the subject matter of the trust is and must be commensurate with the powers conferred by the trust and the purposes to be effected by it. The trustee acquires whatever estate is needed to enable him to accomplish the purposes of the trust, even a fee simple. (*Lawrence* v. *Lawrence,* 181 Ill. 248.) If the duties devolving upon them by the terms of the trust are such as can only be performed if the trustees are clothed with the legal title in fee, then they are vested with such title. The quantity of the estate taken by a trustee must be determined not merely from the fact that words of inheritance in the trustee are or are not used, but from the intention of the parties, and such intent is to be determined by the scope and extent of the trust upon which the legal estate in the trustees is here based. The testator's intention must be gathered by reading the entire will and codicil. The clause of the will which devised and bequeathed the property to the trustees clearly intended to give them the same kind of title as to all the different parcels of property. Both the will and the codicil with reference to the legacy of Louise W. Percy give the trustees, in terms, the power to convey the fee, and the codicil as to the legacy of Annie H. Lyons gives them the power of sale and conveyance not only of the life estate, but uses the word "remainder," thereby plainly showing that the testator intended to give them the power of disposing of the entire legal estate. The provision of the fourth clause as to the division of the principal cannot be carried into effect according to its clear intent without assuming that the trustees were given the legal title to all of the residuary part of the estate, and the fifth clause invests them with authority to sell, convey and lease and to invest and re-invest the proceeds, so that not only the first provision of the will devising the property to the trustees in general terms, but practically all the other provisions, indicate that the testator intended to vest the trustees with the full legal title. How, otherwise, could they carry out the purposes of the

trust? In *Kirkland* v. *Cox,* 94 Ill. 400, this court, in discussing this question, stated (p. 413): "Thus, if land is conveyed to trustees, without the word 'heirs,' in trust to *sell,* they must have the fee, otherwise they could not sell. The construction would be the same if the trust was to sell the whole or a part, for no purchasers would be safe unless they could have the fee, and a trust to convey or to lease at discretion would be subject to the same rule." The rule as laid down in the above case is quoted from Perry on Trusts. (Vol. 1, 3d ed. sec. 315.) In *West* v. *Fitz,* 109 Ill. 425, this court said (p. 439): "The power to sell and convey land absolutely is an incident of a fee simple estate, only." In the recent case of *McFall* v. *Kirkpatrick,* 236 Ill. 281, we reviewed at length the authorities on this question, and stated (p. 294): "If a trustee is directed and empowered to convey land the legal estate necessarily vests in him, and if he is required to convey a fee the fee must be conferred upon him."

The whole purpose and scope of this will can only be consistently carried out by holding that the testator intended to, and did, give a fee simple legal title to all his property to his trustees. Under a will clothing the trustees with the power given in this case the construction contended for by appellants will never be adopted, as was said by this court in *West* v. *Fitz, supra,* on page 439, "except where the estate of the trustee is expressly or by necessary implication limited to an estate for life or for a term of years."

Among the cases relied upon by counsel for appellants construing wills or deeds and holding that the trustees took only a chattel interest or a legal title less than a fee, are the following: *Lambert* v. *Harvey,* 100 Ill. 338; *Baker* v. *Scott, supra; Walton* v. *Follansbee,* 165 Ill. 480; *Cordal's case,* 1 Cro. Eliz. 316; *Shapeland* v. *Smith,* 1 Brown's Ch. 75; *White* v. *Simpson,* 5 East, 162; *Hitchens* v. *Hitchens,* 2 Vern. 403; *Woodcock* v. *Barthrop,* 5 Taunt. 382. The wording of the provisions in the wills or deeds in those

cases is so very different from the wording here that this case can be readily distinguished from all of the above cases on that point. None of these decisions can be considered decisive here, and few of them are even persuasive. This will, by its terms, *prima facie* gives a title in fee. Obviously, the duties of the trustees do not cease upon the death of the first daughter, as contended by appellants, but must continue until after the death of both the daughters, and their duties can only end, according to the testator's intention, when they have transferred the fee of the half left to the daughter dying last, to her heirs.

Counsel for appellants argue that the estate in the trustees is a legal life estate, "which comes to an end within a reasonable or discretionary period after the death of the daughter first dying." If the legal estate continues in the trustees after the death of the daughter dying first, even for a reasonable period, it follows that there cannot during that time be a legal vested remainder in the heirs of the life tenant, and if the legal title to the trustees continues beyond the period of the life tenancy the interest to the heirs must of necessity be equitable in its nature. If the legal title to the fee was intended to be vested by the testator in his trustees, it is axiomatic that not only the life estates left to the daughters but the interests left to the heirs of each of the daughters must also be equitable. The entire legal fee being in the trustees, there could be no part of the legal title vested at the same time, by the same instrument, in anyone else.

The duties of the trustees up to the time of the distribution of this estate are active and not passive. The legal estate that was to go to the heirs of either of the daughters cannot vest in them except by means of conveyance from the trustees. Where the trust is active the Statute of Uses does not execute it. (*Silverman* v. *Kristufek,* 162 Ill. 222.) It is conceded by counsel for appellants that the trust devolving upon the trustees is an active one. As we under-

stand counsel's contention, it is that the Statute of Uses, after the active duties cease, would operate to divest the title of the trustees and transfer it to the heirs of the daughters. Counsel rely upon the sentence in clause 4 of the will which reads, "upon the death of the other of my daughters the other half shall go to her heirs." This particular question was discussed and the authorities reviewed at length in *McFall* v. *Kirkpatrick, supra.* On page 300 of that case we said: "On the general question whether the Statute of Uses ever operates to divest the title of a trustee whose active duties have ceased the courts are not agreed, and there have been expressions in the decisions of this court which are not harmonious." After reviewing the authorities the opinion continues (p. 302): "The decision in *Kirkland* v. *Cox* has never been criticised or disapproved and there is no contrary decision where the question was involved, and the real effect of the cases in equity is, that when active duties have ceased it is the duty of the trustee to convey the legal title."

Considering the entire plan of the will we think the sentence relied upon in said fourth clause by counsel for appellants cannot bear the construction contended for, as the duties of the trustees were active, even after the death of the daughter dying last. There can be no division of the principal, as required in the fourth clause of the will, between the heirs of the two daughters, unless the trustees have the legal title to the entire residuary fund in which the daughters are given equitable life estates. The trustees cannot divide and give one-half the principal to the heirs of the daughter first dying if only one-half of the legal estate is vested in them. It must be held, under the reasoning of this court in *McFall* v. *Kirkpatrick, supra,* that the legal title remained in the trustees, and that in order to have such legal title vest in the heirs of the daughters it will be necessary that it be conveyed to them by the trustees. It is obvious that under this will the testator intended not only

that the daughters should take equitable life interests, but that the interest of the heirs of each of the daughters was also equitable in its nature. The rule in *Shelly's case* must be held to apply as to the real estate left by the testator.

Are the daughters of the testator also entitled to a fee in the personal property? It has been frequently stated that "while, strictly speaking, the rule in *Shelly's case* is applicable only to real estate, the same principles are applied, by analogy, to similar dispositions of personal property and to the same extent." (25 Am. & Eng. Ency. of Law,— 2d ed.—p. 649, and cases there cited.) An examination of the authorities cited in support of the text will show that in many of them the precise question here involved was not raised. In *Glover* v. *Condell, supra,* (one of the cases cited,) this court stated as the general rule that where there is a bequest of personal property to A and his heirs, A will take an absolute interest; that, strictly speaking, the words "heir" and "heirs of his body" are inapplicable to personal property, and that where a gift is made to A and his representatives, A will take the absolute property; that so, also, a gift to A for life and then to his personal representatives will give A the absolute property; and the opinion then continues (p. 587) : "This rule applies where the personal property is in the hands of trustees. 'Thus, if money or stock be settled in trust for A for life and after his decease in trust for his executors, administrators and assigns, A will be simply entitled absolutely, in the same manner as a gift of lands to A for his life, with remainder to his heirs and assigns, gives him an estate in fee simple.'—Williams on Personal Property, 244." The opinion, after citing other authorities, then continues: "Though, strictly speaking, this rule has reference to real estate only, yet it is often applied to grants of personalty, by way of analogy, for the purposes of construction, and when so applied yields more readily to the apparent intention of the testator than it does in grants of realty."

It is argued by appellee that as the residuary clause disposes of both the real and personal estate, the language used must be construed alike as to both. While this reasoning would be of some force in deciding as to the intention of the testator, (*Webbe* v. *Webbe,* 234 Ill. 442,) still it can not be decisive on the question whether the rule in *Shelly's case* will apply to personal property. In *Herrick* v. *Franklin,* 6 Eq. Cas. L. R. 592, the court said it could not "assent to such a proposition of law as that where real and personal estates are blended the personalty goes as the realty. Such a proposition is, I think, bad law, and authority is the other way. There is no authority for holding that because the rule in *Shelly's case* \* \* \* applies to real estate it is to be applied to personal estate also. *Forth* v. *Chapman,* 1 P. Wms. 664, decides that the same words, when applied to different subjects, may bear a different construction." After further discussing the authorities the court there held that the plaintiff only took a life interest in the personalty, though by the same wording he took the realty in fee. In Theobald on Law of Wills (2d ed. 370,) that author, in referring approvingly to the decision just cited, said: "The better opinion seems now to be that the court will not shrink from giving a different construction to the words 'heir' and 'heirs of the body' as regards realty and personalty, though given together in the same clause." In *Smith* v. *Butcher,* 10 L. R. Ch. Div. 113, the court held that in a bequest of personal estate to the "children of A during their lives and on the decease of either of them his or her share of the principal to go to his or her lawful heir or heirs," the words must bear their ordinary and primary meaning, and that as to this property the rule in *Shelly's case* did not apply; that the will simply gave a gift of the personal estate to the children of A for life and the remainder to their heirs. In the recent case of *Jones* v. *Rees,* 69 Atl. Rep. (Del.) 785, the court, after reviewing the authorities, held that the rule in *Shelly's case* did not apply to per-

sonal property. Substantially to the same effect are *Avern v. Lloyd,* 5 Eq. Cas. L. R. 383; *Crawford v. Wearn,* 115 N. C. 540; *Gross v. Sheeler,* 7 Houst. 280; *Vogt v. Vogt,* 26 App. Cas. D. C. 46; *Clemens v. Heckscher,* 185 Pa. St. 476.) In Kales on Future Interests (sec. 135) that author, in discussing this question, states: "But it must be perfectly clear from the foregoing exposition of the rule in *Shelly's case* that there is absolutely no point which can serve as a connection between it and the above rule of construction regarding limitations of personalty. The suggestion * * * that the rule in *Shelly's case* applies, by way of analogy, to limitations of personalty should receive no encouragement." This court, in *Bennett v. Bennett,* 217 Ill. 434, again referring to the rule in *Shelly's case* as applied to gifts in personalty, held that while, strictly speaking, the word "heirs" had no application to gifts of personalty, still "in all cases where the word is used in devises of personalty it is held to yield to the express intention of the testator." After citing authorities the opinion continues: "There being no present grant to the appellant by the will in question, we are disposed to regard the provision as to the heirs taking the property in the event that the appellant should die before the time fixed for him to take it, as being words of purchase or substitution," and the conclusion was reached that the rule in *Shelly's case* had no application.

On authority and reason the rule in *Shelly's case* should not be held to apply to gifts of personalty. That part of the decree of the circuit court holding that the daughters of the testator received, under the will, the title in fee to the personal property cannot be sustained.

By cross-errors appellee questions that part of the decree which held that the trustees, under the fifth clause of the will, could not transfer or convey to either of the said daughters, with the consent of the other, any part of the principal of the estate. We are disposed to hold that the

decree is erroneous in so finding. We think the testator had in mind in this clause that a situation might arise where it would be for the best interests of his daughters to have a part of the principal of the estate, and intended, the daughters consenting, that the trustees, if they thought best, might give to the daughters a part of the principal.

The decree of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*