(No. 15909.—Decree affirmed.)

James B. Depler et al. Appellants, *vs.* James H. Dyer et al. Appellees.

*Opinion filed April 14; 1924—Rehearing denied June 13, 1924.*

1. Wills—*rule in Shelley's case is in full force and effect.* The rule in *Shelley's case* was a part of the common law of England which was adopted in Illinois, and it remains in full force and effect in this State.

2. Same—*statement of rule in Shelley's case.* Where a person takes an estate of freehold legally or equitably under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate.

3. Same—*meaning of word "heirs."* The word "heirs" ordinarily is a technical word with a fixed legal meaning, designating those who would take by virtue of the Statute of Descent.

4. Same—*meaning of a "limitation" to heirs.* The word "limitation" is used to define the extent or quality of an estate conveyed or devised, and where the limitation is to heirs-at-law, in taking as such they must take by descent.

5. Same—*rule in Shelley's case must be enforced regardless of intent.* The rule in *Shelley's case* is not a rule of construction based on the declared or supposed intention of a grantor or testator but it is a rule of law, and regardless of the intention, and even though clearly contrary thereto, the rule must be enforced where the language of the will or deed is not sufficient to make the intention legally effective.

6. SAME—*effect of operation of rule in Shelley's case.* The rule in *Shelley's case* does not operate upon the estate of freehold in the ancestor but only upon the remainder by denying to the remainder the effect of a gift to the heirs and attributing to it the effect of a gift to the ancestor himself, and it simply changes the remainder to the heirs of the devisee or grantee into one to him, so that he has a life estate with remainder in fee to himself.

7. SAME—*when life tenant takes fee under rule in Shelley's case—conveyance.* A devise of a life estate to the testator's son, to continue during the widowhood of the son's wife should she survive him, "and the remainder to the heirs-at-law forever" of the said son, gives the life tenant the fee under the rule in *Shelley's case,* although his life estate is preceded by a life estate in the testator's widow; and a conveyance by the life tenant and his wife, subject to the life estate in the testator's widow, vests a fee simple title in possession in the grantees.

8. SAME—*rule in Shelley's case does not require ancestor's estate to be of same quantity as limitation to heirs.* The application of the rule in *Shelley's case* depends upon the nature of the estate intended to be given to the heirs and not upon the quantity of estate given to the first taker provided it is a freehold, but the freehold and remainder must be created by the same instrument and be of the same quality.

9. SAME—*application of rule in Shelley's case where several life estates are given.* Where there is a limitation to several for their lives with a remainder in fee to the heirs of one of them, the estate in remainder, under the rule in *Shelley's case,* vests at once in the ancestor to whose heirs it purports to be given.

APPEAL from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding.

DALLAS M. HAYS, and A. R. HALL, (HALL & HOLADAY, of counsel,) for appellants.

JAMES H. DYER, H. M. STEELY, and H. M. STEELY, JR., for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

James B. Depler, Lulu Medes and Jessie Myers, three of the heirs-at-law of James A. Depler, filed their bill in the circuit court of Vermilion county, making Julia Slusser, the

remaining heir-at-law, and others who claimed title from James A. Depler, defendants, and praying for the partition among said heirs-at-law of the southeast quarter of section 25, in township 23, north, range 12, in that county, and for the removal of alleged titles derived from James A. Depler as a cloud upon their title. The defendants claiming title under a deed from James A. Depler and his wife filed answers, denying that the complainants and Julia Slusser had or were entitled to any right, title or interest in the real estate, and alleged that James A. Depler was the owner in fee simple of the premises. Upon a hearing the chancellor dismissed the bill for want of equity, and the complainants were allowed and perfected their appeal to this court.

George W. Depler, being the owner of the land, made his will on August 16, 1883, devising the same by the second and third clauses as follows:

"*Second*—I give, bequeath and devise to my said wife, Julia Ann, for and during her natural life, with remainder as hereinafter specified, all my real estate wherever situate, upon condition, however, that she pay all taxes legally assessed against the same.

"*Third*—Subject to the life estate therein of my said wife, Julia Ann, and at her death, I give, bequeath and devise to my son James Anthony Depler and his present wife, Anna Depler, and to the survivor of them, for and during the natural life of the said James and the widowhood of his said wife, should she survive him, and the remainder to the heirs-at-law forever of the said James, the following described real estate situate in the county of Vermilion and State of Illinois, that is to say, the southeast quarter of section 25, in township 23, north of range 12, west."

George W. Depler died on August 14, 1899, and his will was admitted to probate on October 21, 1899, and Julia Ann Depler, the widow, who was appointed executrix, qualified and received letters testamentary. Her final account

was filed and approved on February 24, 1908. When the will was made and when the title vested under it, James A. Depler was married to Anna Depler and they had living children. On December 28, 1900, James A. Depler and wife made their warranty deed to the land devised, for an expressed consideration of $3350, to William B. Redden, subject to the life estate of Julia Ann Depler. On January 26, 1901, Redden and wife conveyed the land by warranty deed, for a consideration of $10,000, to Philip Cadle, Oliver P. Stufflebeam and Charles A. Allen, also subject to the life estate of Julia Ann Depler. On July 16, 1901, Allen and wife, for a consideration of $2500, quit-claimed the land to the defendant James H. Dyer, subject to the life estate of Julia Ann Depler. On May 13, 1913, Cadle and wife, for a consideration of $5333, conveyed by warranty deed to Dyer, subject to the life estate of Julia Ann Depler. Stufflebeam died intestate, and Dyer filed a bill against the Stufflebeam heirs for partition, and there was a decree setting off two-thirds of the tract to Dyer and one-third to the heirs of Stufflebeam. Anna Depler, wife of James A. Depler, died on August 22, 1906, and he married a second wife. On December 30, 1919, Julia Ann Depler, widow of the testator, died and her life estate came to an end. James A. Depler died on December 12, 1921, leaving surviving him his second wife, Julia, and the complainants and the defendant Julia Slusser, his children and heirs-at-law.

The bill alleged that the will of George W. Depler devised only a life estate to James A. Depler after the life estate of the widow, Julia Ann Depler, and that his heirs were the owners of the remainder after the life estate, with a right to partition. The sole question to be determined is whether that was the legal effect of the will, or whether James A. Depler was invested with the legal title, subject to the precedent life estate of his mother, by virtue of the rule in *Shelley's case.* That rule took its name from a celebrated case in Lord Coke's time, although the rule itself an-

tedated that case, and the origin of the rule and the reasons for its adoption have been lost in obscurity. It was a part of the common law of England, adopted in this State, and remains in full force and effect. (*Baker* v. *Scott,* 62 Ill. 86; *Hageman* v. *Hageman,* 129 id. 164; *Fowler* v. *Black,* 136 id. 363; *Vangieson* v. *Henderson,* 150 id. 119; *Cook* v. *Sober,* 302 id. 498.) In *Cook* v. *Sober, supra,* the following definition was given as generally accepted: "When a person takes an estate of freehold legally or equitably under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality to his heir or heirs of his body as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." The word "heirs" is a technical word with a fixed legal meaning, designating those who would take a remainder by virtue of the Statute of Descent. In law the word "limitation" is used to define the extent or quality of an estate conveyed or devised, and where the limitation is to heirs-at-law they take by descent, because the ancestor has an estate of inheritance. The rule is a rule of law, and not a rule of construction based on the declared or supposed intention of a grantor or testator. The rule operates in no manner whatever upon the estate of freehold in the ancestor, but only upon the remainder by denying to the remainder the effect of a gift to the heirs and attributing to the remainder the effect of a gift to the ancestor himself. It simply changes the remainder to the heirs of the devisee or grantee into the remainder to him, so that he has a life estate with the remainder in fee to himself. (Kales on Estates and Future Interests,—2d ed.—sec. 440.) George W. Depler devised a life estate to his wife, Julia Ann, and, subject to that life estate, devised a life estate to his son James and his wife, Anna, and the survivor of them, during the natural life of

James and the widowhood of his wife, if she should survive him, with remainder to the heirs-at-law of James forever. That did not prevent the application of the rule, since other estates or interests may be inserted between the life estate and the remainder to the heirs. *McFall* v. *Kirkpatrick,* 236 Ill. 281; *Carpenter* v. *Hubbard,* 263 id. 571.

The freehold and remainder must be created by the same instrument and be of the same quality but need not be of the same quantity. The application of the rule to a given case does not depend upon the quantity of the estate given to the first taker, provided it is a freehold, but upon the nature of the estate intended to be given to the heirs. Heirs taking as heirs must take by descent, and the estate of the ancestor need not be of the same quantity as the limitation to the heirs. In *Ward* v. *Butler,* 239 Ill. 462, the will devised a life estate in an entire farm to the widow, with remainder to her heirs in an undivided one-half of the farm and to the testator's brother and his heirs in the other half. The widow took the fee of an undivided one-half and the brother took the fee of the other half, subject to the life estate of the widow in the whole. In *Bails* v. *Davis,* 241 Ill. 536, there was a conveyance by statutory quit-claim deed "to Joseph Kretzer and Mora Kretzer, his wife, during their natural lives and after their death to the heirs of said Joseph Kretzer." There was a merger in the ancestor, whose title by subsequent conveyances became vested in the complainants. In that suit it was decided that if there was a merger in the ancestor, it followed not as a necessary result of the operation of the rule but from the operation of another independent rule of law in regard to separate estates which in any manner became vested in one person. Where there is a limitation to several for their lives, with a remainder in fee to one of them, the estate in remainder vests at once in the ancestor to whose heirs it purports to be given. (Fearne on Contingent Remainders,—4th ed.—25; 1 Preston on Estates, 313; Watkins on Descent, 162; *Bul-*

*lard* v. *Goffe,* 20 Pick. 252; *Fuller* v. *Chamier,* L. R. 2 Eq. 682; *Rogers* v. *Down,* 9 Mod. 292.) In this case the wife, Anna, joined in the conveyance to Redden, and her life estate merged in the fee. The life estate of the widow came to an end and the grantees under that conveyance became vested with a fee simple in possession.

The rule takes effect regardless of the intention of the testator, and frequently, and perhaps generally, contrary to his intention. (*Carpenter* v. *VanOlinder,* 127 Ill. 42.) The testator having a right to dispose of his property by will may devise it according to his intention, provided such intention is not contrary to a fixed rule of law, such as the rule against perpetuities or the rule in *Shelley's case.* It is quite clear that George W. Depler did not intend to give James A. Depler any more than a life estate. Such intention is shown by a devise of another tract of land in fee simple to Hughes H. Depler, another son of the testator, who was married but had no children living. Afterward, on February 7, 1888, that son and his wife had living children, and George W. Depler added a codicil to his will, devising the other real estate in the same language as the devise to James A. Depler, with a statement that his intention was to give only a life estate in said real estate to the son and his wife and the remainder in fee to go to the heirs of the son. To express that intention he employed a deputy county clerk to draft his will. The person employed gave clear expression to the intention, but in ignorance of the law did not know how to make the intention legally effective. As expressed it was contrary to the rule in *Shelley's case,* which cannot be set aside because the will was drawn by a person who was not aware of the rule.

The decree is affirmed.

*Decree affirmed.*