Margaret B. Seymour, Individually and as Successor Trustee Under the Will of Effie J. Seymour, Deceased, Plaintiff-Appellee, v. Walter Heubaum, et al., Defendants-Appellants.

Gen. No. 64–133.

Second District.

November 22, 1965.

Carbary, Carbary & Chapski, and Robert I. Burstein, all of Elgin (George D. Carbary, Robert A. Chapski and Robert I. Burstein, of counsel), for appellants.

Daniel M. Schuyler, of Chicago, and Ben Rifken, of Elgin (Daniel M. Schuyler and Ben Rifken, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is a suit seeking construction of a will and a declaratory judgment that plaintiff is owner in fee simple absolute of certain real estate. The issue before the court is the applicability of the rule in Shelley's case to a certain devise contained in the will of Effie Seymour, who died in 1939. If the rule is applicable under the language of the will, its abrogation by statute in 1953 (Ill Rev Stats 1963, c 30, pars 186, 187), will not affect the determination here as the statute has no retroactive application. Baker v. Forsuman, 15 Ill2d 353, 359, 155 NE2d 24 (1959).

After making certain specific bequests, Effie Seymour provided in paragraphs five and six of her will, in pertinent part, as follows:

> "Fifth: I give, devise and bequeath all the rest and residue of my estate real or personal, wherever situate, including all my right, title and interest in and to the real estate known as . . . , to J. Harter Kirkpatrick . . . as trustee, to be held in trust for the benefit of my son William H. Seymour during his lifetime and upon his death to be paid to his lawful heirs . . . ."

"Sixth: I give my said trustee . . . full power and authority to sell, rent or improve both real estate and personalty and to sign and deliver all necessary instruments of transfer . . . to rent, mortgage, repair, alter or sell any real estate the same as I might do if living . . . nor shall any order of court be necessary in making any such sale and any real estate or personalty so sold shall be unencumbered by this trust, I direct that said income from this trust shall be payable only to said named beneficiary or his legally appointed guardian for his sole use. The trustee may in his discretion pay out of the principal to said beneficiary if necessary to his support. I direct said trustee pay for a proper burial for my son William H. Seymour . . . ."

As indicated, Effie Seymour died in 1939; her son, William, died in 1960 leaving a will in which he devised all of his property to his wife, the plaintiff, who brought this suit seeking a construction of Effie Seymour's will and a judgment declaring that her husband took a fee interest under his mother's will, capable of being devised to her. This contention is premised upon the applicability of the rule in Shelley's case to the mother's will, converting the remainder to William's lawful heirs into a remainder in fee in William. The trial court held that the rule in Shelley's case was applicable and that William thus took the remainder as well as the life estate, which constituted the fee; and that, therefore, he had the power to dispose of the same by will. The defendants, the heirs of William other than his widow, prosecuted this appeal.

██ ██ Stated simply, the rule in Shelley's case is that whenever, in the same instrument, an estate of freehold is limited to the ancestor, and a remainder to his heirs, either mediately or immediately, in fee, or in tail, the words "heirs" is one of limitation of the estate,

and not of purchase, and the ancestor takes the fee. People v. Emery, 314 Ill 220, 223, 145 NE 349 (1924). Whenever the grants of the freehold and remainder are contained in the same instrument, there are three requisites for application of the rule: First, a freehold estate must be granted to the ancestor; second, a remainder must be limited to his "heirs", general or special, as such—that is, by the name of heirs and without explanation as meaning sons, children, etc.; and third, the two estates, freehold and the remainder, must both be of the same quality,—that is, both must be either legal or equitable. People v. Emery, ibid.; Baker v. Scott, 62 Ill 86, 93, 94 (1871).

 The rule in Shelley's case is a rule of property—not a rule of construction. Lord v. Comstock, 240 Ill 492, 499, 88 NE 1012 (1909); Hageman v. Hageman, 129 Ill 164, 168, 21 NE 814 (1889); Baker v. Scott, supra; Carey and Schuyler, Illinois Law of Future Interests, sec 93, pp 151, 152 (1941). It matters not that the creator of the instrument in question manifested an intent that the property pass in a manner different than that resulting from the application of the rule. That is, in fact, the necessary result of the rule. It operates on the remainder alone, taking it from the heirs and vesting it in the ancestor; and although the preceding estate of freehold is a circumstance necessary to its application, such estate is not directly affected by it. The ordinary rules of construction are applicable only in first determining if there is a "freehold"; if there is a remainder in the "heirs," and if the two estates are of the same quality. These determinations are made wholly independently of the rule in Shelley's case, itself. 1 Hayes, Conveyancing, 542–545 (5th ed 1840).

It is not disputed that the will of Effie Seymour granted an equitable life estate, and thus a freehold, to her son, William. The defendants contend, however, that the second and third requisites for the application of the

rule are not present. They argue that the second requisite is absent because the word "heirs" was intended to designate certain persons other than those ordinarily encompassed within the meaning of the word, and it was thus used as a word of "purchase" not of "limitation"; and that the third requisite is missing in that the life estate was equitable and the remainder was legal. Hence, they urge that the two estates were not of the same quality. Lastly, they contend that the plaintiff is guilty of laches and is further estopped from asserting the application of the rule in Shelley's case.

■ The word "heirs" is a technical word, and when used it is presumed to have been used in its strict technical sense. If it is to be given a meaning other than its strict legal meaning, it must clearly and affirmatively appear that the author of the instrument did not intend that the word "heirs" be used in its proper and legal sense. Spicer v. Moss, 409 Ill 343, 354, 355, 100 NE2d 761 (1951); Carpenter v. Hubbard, 263 Ill 571, 581, 582, 105 NE 688 (1914).

■ Defendants contend that since Effie Seymour's will contained two specific bequests of $100 each to her two step-daughters, described as "my daughters," she thus evidenced an intent that the two named step-daughters were to take under her will as her own son's "heirs", although not technically such. If this intention were clearly manifested, we concede that the word "heirs" would not have been used in its technical and legal sense and the rule in Shelley's case could not be applied. However, it is not readily apparent to us how the two specific bequests of $100 each to her respective step-daughters, designated as "daughters," manifests an intent that they are to be included in the devise of the entire residue of her estate to the "lawful heirs" of her son upon his death. We think rather, that such bequests to each of her step-daughters would indicate an intent to exclude them from the residuary estate; and that the designa-

tion of her son's "lawful heirs" as the ones to ultimately take upon his death indicated that Effie Seymour had exhausted her specific wishes by prior bequests and when disposing of her residuary estate, she was content to let the law then take its course. Robertson v. Eastern Long Island Hospital, 28 Ill2d 483, 490, 491, 192 NE2d 895 (1963).

That the word "heirs" is preceded by the word "lawful" does not affect its ordinary or technical meaning. Wilson v. Harrold, 288 Ill 388, 394, 123 NE 563 (1919); Deemer v. Kessinger, 206 Ill 57, 61, 69 NE 28 (1903). The word "heirs" as used by Effie Seymour in her will, was used as a word of limitation and not of purchase, and the second requisite for the application of the rule in Shelley's case is present.

Whether the remainder interest is legal or equitable must depend upon the character of the trust created by Effie Seymour's will. If the trustee was vested with the fee simple title under the trust created by the will, coupled with the power to sell, convey, rent, mortgage, etc., it follows that the life estate limited to William H. Seymour was equitable and the remainder interest given to his "lawful heirs," was likewise equitable—the same as the life estate. Nowlan v. Nowlan, 272 Ill 526, 532, 533, 112 NE 259 (1916); Carpenter v. Hubbard, 263 Ill 571, 580, 105 NE 688 (1914); Lord v. Comstock, 240 Ill 492, 500, 88 NE 1012 (1909).

The quantity of the estate taken by the trustee is not determined from the particular form of the devise to the trustee, but, rather, from the intention manifested by the testator in defining the scope, extent and purpose of the trust and the duties of the trustee thereunder. The trustee will take whatever legal estate is necessary for him to carry out the purpose of the trust and his duties thereunder. If a fee is required, a fee will be taken; if a lesser estate will suffice, then only such an estate will vest. Wattjes v. Faeth, 379 Ill

290, 295, 296, 40 NE2d 521 (1942); Lord v. Comstock, supra at 501.

 Our courts have long held that a devise to a trustee in which there is a power in the trust to sell, necessarily vests the fee in the trustee. In Nowlan v. Nowlan, supra, the Court on page 533, stated:

> "The trustee is authorized and empowered, in his discretion, to sell the trust estate and to make a conveyance vesting perfect title in the purchaser. He was necessarily vested with the fee for the purpose of carrying out this provision (citing cases)."

In Lord v. Comstock, supra, at page 501, the Court stated:

> "The trustee acquires whatever estate is needed to enable him to accomplish the purposes of the trust, even a fee simple. (Lawrence v. Lawrence, 181 Ill 248.) If the duties devolving upon them by the terms of the trust are such as can only be performed if the trustees are clothed with the legal title in fee, then they are vested with such title. The quantity of the estate taken by a trustee must be determined not merely from the fact that words of inheritance in the trustee are or are not used, but from the intention of the parties, and such intent is to be determined by the scope and extent of the trust upon which the legal estate in the trustees is here based."

and at page 502, the court in quoting from earlier cases, stated:

> "In West v. Fitz, 109 Ill 425, this court said (p 439): 'The power to sell and convey land absolutely is an incident of a fee simple estate, only.' In the recent case of McFall v. Kirkpatrick, 236 Ill 281, we reviewed at length the authorities on this question, and stated (p 294): 'If a trustee is directed and empowered to convey land the legal estate necessarily

99

vests in him, and if he is required to convey a fee the fee must be conferred upon him.' "

Effie Seymour's will gave to her trustee "full power and authority to sell, rent or improve (the) real estate . . . and to sign and deliver all necessary instruments of transfer . . . to rent, mortgage, repair, alter or sell any real estate the same as I might do if living . . . ." It is inconceivable to us how the trustee, under powers given to him by this instrument to enable him to carry out his duties and the purpose of the trust, could be vested with anything less than the full and complete legal title to the real estate.

The language of devise in the fifth paragraph of the will, "I give, devise and bequeath all the rest and residue of my estate real or personal, wherever situate, including all my right, title and interest in and to the real estate known as . . . to J. Harter Kirkpatrick . . . as trustee, . . . ," is certainly as indicative as language might be of an intent to give the complete fee simple title to the trustee. Unless there is explicit language elsewhere in the will which expressly or necessarily dictates that the trustee received less than a fee, an express devise of the trust estate to the trustee, coupled with an absolute power of sale, vests the trustee with the fee. Nowlan v. Nowlan, supra, at 532, 533; West v. Fitz, 109 Ill 425, 439, 440 (1884).

While we do not deem it crucial to our determination, two other provisions of the will are consistent with the apparent intent to convey a fee to the trustee. The trustee was directed to pay for a proper burial for the life tenant. The fact that the trustee has duties to perform after the death of the life tenant suggests a legal fee in the trustee, rather that a life estate coupled with powers. West v. Fitz, supra, at 438–441. The defendants suggest that this provision does not really impose any duties upon the trustee to be carried out after the life

100

tenant's death, as the trustee could have paid for the life tenant's burial while he was still alive. Such possibility does not alter the fact that if the trustee paid for the burial in the normal course of events, he did so after the life beneficiary's death, and there is nothing before us to indicate otherwise.

This contention is effectively answered in West v. Fitz, supra, page 440 in these words:

> "Jarman, in his valuable work on Wills, (volume 3, page 67,) after reviewing some of the cases relating to this subject, says: 'The general rule now acted upon is, that where an estate is given to trustees, all the trusts must, prima facie, be performed by them by virtue or out of the estate vested in them; . . . for it would be a strange and artificial construction to hold, first, that the natural meaning of the words should be cut down because they would give an estate more extensive than the trust required, and then, when the trust does require the whole fee simple, that it must be supplied by way of power, defeating the estate of the subsequent devisees, and not out of the interest of the trustees. To rebut this prima facie construction, it must be shown on the face of the will what estate of definite duration will enable the trustee to serve the trusts out of their interest, and not by way of power,—and *this not according to subsequent events, but according to events possible at the testator's death.*' " (Italics ours.)

 If the legal estate continued in the trustee after the death of the life tenant, no matter how short the period, there cannot during that same period be a legal vested remainder in the heirs of the life tenant. The remainder interest given to the heirs must then, of necessity, be equitable in nature. Lord v. Comstock, supra, at 503.

101

The will further provided that upon the death of William Seymour, the rest and residue of the estate that was devised and bequeathed in trust, was then "to be paid" to his lawful heirs. The defendants urge that the word "paid" cannot be interpreted to mean "convey" and suggest that it might be construed to mean "descend," in which case, they argue, the trust became passive immediately upon the death of the life tenant, and was executed by the Statute of Uses, and the remainder interest was then legal. Alternatively, they argue that the word "paid" assumes a liquidation of the property involved and by implication directs that a sale of the property must be made with the result that the doctrine of equitable conversion applies, in which event the remainder interest is personal property to which the rule in Shelley's case does not apply. This argument, however, is more ingenious than persuasive. The wording of the fifth paragraph of the will does not suggest or require the liquidation of the trust estate. Nor do the words "to be paid" lend themselves to the interpretation of being synonymous with "descend."

In Robertson v. Eastern Long Island Hospital, supra, the wording of the will under consideration was "to pay and make over to my heirs at law . . . ," and such words were treated as words of conveyance. If any significance can be given to the words "to be paid," we believe that it is that the testator manifested an intent, albeit inept, that insofar as the real estate was concerned, the trustee was "to convey" it to her son's lawful heirs.

In McFall v. Kirkpatrick, 236 Ill 281, 86 NE 139 (1908), the court construed the deed there before it as directing the trustee to convey the property to the life tenant's heirs upon her death, in the event of default of appointment by the life tenant. The court stated that the trust was an active one and could not be executed until the trustee completed the last active duty imposed upon him by the deed, which was to convey the premises

to the appointee of Eliza Houston after her death. The court further stated that this duty to convey, prevented the trust from becoming passive and from being executed by the Statute of Uses; that the trustee retained the legal title until he made such conveyance; and that the limitation of the remainder was thus of the same quality as that of the life estate—equitable—with the result that the rule in Shelley's case was held to apply.

 As to whether the Statute of Uses may ever operate to execute a trust in which the trustee has obtained full legal title or whether, in such cases, the trustee retains the active duty of conveying the legal title upon the termination of all other active duties, it appears that our courts have not always reached consistent conclusions. See McFall v. Kirkpatrick, 236 Ill 281, 300–303, 86 NE 139 (1908). Insofar as the application of the rule in Shelley's case is concerned, however, the determination of whether or not the Statute of Uses becomes operative, is irrelevant. For if we concede the operation of the Statute of Uses which would convert the remainder from an equitable into a legal interest, even then the statute may not execute the trust until all of the active duties of the trustee have been performed and nothing remains to be done. Jackson v. Pillsbury, 380 Ill 554, 578, 44 NE2d 537 (1942); Meacham v. Steele, 93 Ill 135, 145 (1879). The inquiry to be made regarding the applicability of the rule in Shelley's case is as to the effect of the instrument creating the freehold and remainder estates on the date such an instrument becomes effective. In the case of a will, it is as of the date of the testator's death. Thus, if a trust is created in a will, with the result that the freehold is equitable, the inquiry to be made in determining the quality or nature of the remainder, must be as to the quantum or size of the trustee's estate at the inception of the trust. If it is a fee interest, then the freehold and remainder must be equitable in nature. Carey & Schuyler, Illinois Law of Future Interests, p 171 (1941).

103

If both estates—the freehold and remainder—are of the same quality at the time the trustee takes title, it matters not that the quality or nature of one of the estates might, or might not, be altered at some later time.

It is inescapable under the language of the devise, which included the power to sell and convey and imposed duties on the trustee after the death of the life tenant, all as set forth in the will of Effie Seymour, that the trustee was granted complete legal title. The remainder interest was thus, of necessity, of the same quality as the freehold estate—equitable. All of the requisites for the application of the rule in Shelley's case are here present, with the result that the life tenant, William Seymour, was given the fee to the real estate in question under the will of Effie Seymour. The application of the rule in Shelley's case to a particular case depends, not upon the quantity of the estate intended to be given to the ancestor, but upon the estate devised to his heirs. It conclusively expresses the intention of the testator, and governs and controls in determining the estate devised, notwithstanding the expression of an intention on the part of the testator that the ancestor shall take a less estate than the fee. It changes the remainder to the heirs of the devisee, into a remainder to the ancestor, so that he has a life estate with the remainder in fee to himself. Depler v. Dyer, 312 Ill 537, 541, 144 NE 212 (1924) ; Hageman v. Hageman, supra.

Lastly, the defendants contend that William Seymour during his lifetime committed certain acts which estop the plaintiff from asserting that he was granted an equitable fee in the remainder by application of the rule in Shelley's case. In this regard, they assert that during his lifetime, William Seymour filed an answer to a petition of the then trustee under Effie Seymour's will in which he acknowledged that the defendants had an interest in the realty. In the petition in question, the trustee sought leave of court to mortgage the trust property, although the trust provisions expressly granted this power unto

the trustee without requiring any court approval. In this proceeding for leave to mortgage the premises, the same counsel represented both William Seymour and the trustee and a consent decree was entered by the court.

 This prior action cannot be the basis of a plea of estoppel by judgment in that it is a different cause of action than that presented here. Smith v. Bishop, 26 Ill2d 434, 436, 187 NE2d 217 (1962). Nor can it be the basis of a plea of estoppel by verdict, as the issue of the applicability of the rule in Shelley's case and the possibility of an equitable fee in the remainder being in William Seymour was neither in issue or controverted in the prior action, nor determined by that court. Estoppel by verdict is a bar only to those matters actually litigated by the same parties in a prior action. Smith v. Bishop, ibid.; Chas. Ind Co. v. Cecil B. Wood, Inc., 56 Ill App2d 30, 36, 205 NE2d 786 (2nd Dist 1965).

Defendants further assert that William Seymour was guilty of laches in asserting his title under the rule in Shelley's case by acquiescing in receiving only the income from the trust property during his lifetime and that such laches is imputable to plaintiff here, and cite City Trust & Sav. Bank of Kankakee v. Knight, 249 Ill App 617, 630 (2nd Dist 1928), to sustain this contention. However, the circumstances of the case at bar and the Knight case are not similar. In Knight, the issue was the right to income for a 15 month period, which was some 20 years prior to the time the claim thereto was asserted. There the Court held the laches of the life tenant imputable to his personal representative. Such factual situation is absent in the case at bar.

 Here, if the rule in Shelley's case is applicable, it affects the remainder, not the preceding freehold. Accepting the benefits of the life estate is not necessarily inconsistent with later claiming the applicability of the rule in Shelley's case. Laches, also, is not merely a matter of delay. It is a failure to assert a right over a period of time, which when taken in conjunction

105

with all other circumstances would result in undue prejudice to the adverse party. It is thus principally a question of inequity in permitting a claim to be enforced when during the delay there has been a change in condition of the subject matter or relation of the parties resulting in a disadvantage in the party against whom the claim is asserted. Elliott v. Pure Oil Co., 10 Ill2d 146, 156, 139 NE2d 295 (1957); Freymark v. Handke, 415 Ill 360, 366, 367, 114 NE2d 349 (1953). No such inequity is here shown.

Further, as stated above, the rule in Shelley's case alters only the remainder and not the prior freehold. There was not a substantial lapse of time between the death of the life tenant and the assertion of the claim made by this action. The only claim that could have been asserted by the life tenant which he did not make, was that through the doctrine of merger, the remainder and the life estate coalesced, giving him a fee during his lifetime.

Although the rule in Shelley's case may apply, our courts have suggested that there would be no merger of the life estate and the remainder if the life estate is subject to spendthrift provisions, as here. Carpenter v. Hubbard, 263 Ill 571, 580, 105 NE 688 (1914). To permit the merger of such estates under these circumstances, would vitiate the spendthrift provisions of the will.

We are thus of the opinion that the plaintiff is not estopped from asserting the application of the rule in Shelley's case to the devise contained in the will of Effie Seymour, and that the rule applies to the devise. The decree of the Circuit Court is, accordingly, affirmed.

Decree affirmed.

MORAN, J., concurs.

ABRAHAMSON, P. J., dissenting.