(No. 12453.—Decree affirmed.)
SHERMAN G. HULL *et al.* Appellants, *vs.* PAUL HULL *et al.*
Appellees.

*Opinion filed December 18, 1918.*

1. WILLS—*the words "bodily heirs" may be construed to mean children.* The words "bodily heirs," when used in their technical sense, mean the limited class of heirs appointed by law to succeed to real estate in case of intestacy; but the words may be construed to mean "children" where such construction is in accordance with the testator's intention and no settled rule of law or principle of public policy is violated.

2. SAME—*it is presumed testator did not intend to die intestate as to any of his property.* It is a universal presumption that the testator intended his will should take effect and that he did not intend to die intestate as to any portion of his property.

3. SAME—*when term "bodily heirs" means children.* Where the remainder after a life estate in the testator's widow is disposed of in one-sixth shares to "the bodily heirs" of the testator's six named children, one of whom was dead when the will was made and all of whom had living children at that time and at the testator's death, the words "bodily heirs" will be construed to mean the children of the testator's children and will give them a vested remainder, and as the entire estate is disposed of there is no reversion in the heirs of the testator.

APPEAL from the Circuit Court of DeWitt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

E. B. MITCHELL, HERRICK & HERRICK, and L. O. WILLIAMS, for appellants.

W. F. GRAY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Joshua C. Hull died on March 22, 1913, leaving Adeline Hull, his widow, and Emmett K. Hull, Minnie A. Samuels, Edna V. Duzan, Sherman G. Hull and Anna J. Argo, his children and heirs-at-law. By his will he devised to

his wife, Adeline Hull, all his property, real and personal, after the payment of debts and funeral expenses, for her use during her lifetime. The remainder after the life es-· tate was disposed of as follows:

"*Third*—At the death of my said wife, Adeline Hull, I give, devise and bequeath unto the bodily heirs of my nephew, Herbert Hughes Hull, (1/6) one-sixth of my entire estate; and also to the bodily heirs of Minnie A. Samuels (1/6) one-sixth of my entire estate; and also to the bodily heirs of Sherman G. Hull (1/6) one-sixth of my entire estate; and also to the bodily heirs of Edna V. Duzan (1/6) one-sixth of my entire estate; and also to the bodily heirs of Anna J. Argo (1/6) one-sixth of my entire estate; and also to the bodily heirs of Emmett K. Hull (1/6) one-sixth of my entire estate."

The nephew, Herbert Hughes Hull, died before the will was made, and his bodily heirs were Paul Hull, Dorothy Hull and Mary Hull, who are still living. When the will was made, and at the testator's death, his five children were all living and each of them had children, and all are still living. The testator was the owner in fee simple of lands and lots in DeWitt county and one-half of a section of land in Nebraska. The widow, Adeline Hull, entered into possession of all the lands under the will as life tenant, and on January 13, 1917, conveyed her life estate to the five children of the testator, reciting in her deed an intention to merge the life estate in the reversion in fee, and thereby destroy the remainders limited by the will. The grantees in the deed of the widow, who were the children and heirs-at-law of the testator, supposing that the will of their father had been defeated by the deed of the widow and the re- mainders limited to their children thereby destroyed, filed their bill in this case for partition of the lands devised, making the children and bodily heirs of Herbert Hughes Hull and the guardian of one of them, and their own children and the widow, defendants. The adult defendants an-

swered the bill, denying that the complainants had acquired the fee of the lands, and guardians *ad litem* having been appointed for the infant defendants, answers were filed for them. The adult children of the complainants filed their cross-bill for partition, alleging that their interests in the real estate were vested, and the issues were referred to the master in chancery to take the evidence and report his conclusions of law and fact. The master found the facts as above stated and that the testator used the words "bodily heirs" in their technical and legal sense. As legal conclusions he found and reported that the devise to the bodily heirs of Herbert Hughes Hull was a vested remainder but the devises to the bodily heirs of the children were contingent remainders, and by the quit-claim deed of the widow the fee simple was vested in the complainants and contingent remainders destroyed. He recommended that the cross-bill should be dismissed and partition decreed as prayed for by the complainants in the original bill. The complainants excepted to the finding that the bodily heirs of Herbert Hughes Hull had a vested interest in one-sixth of the estate, and the defendants (complainants in the cross-bill) excepted to the finding that the words "bodily heirs" were used in their technical and restricted meaning. The chancellor overruled the exception of the complainants and sustained the exceptions of the defendants, (complainants in the cross-bill,) construed the will to create vested remainders in the children, dismissed the original bill for want of equity and awarded partition according to the prayer of the cross-bill. The complainants appealed.

The nephew, Herbert Hughes Hull, died before the making of the will, and his bodily heirs being in existence when the will was made and when it took effect and definitely ascertained, the remainder limited to them was vested. (*Lachenmyer* v. *Gehlbach,* 266 Ill. 11.) The other devises were of remainders, after the life estate of the widow, to the bodily heirs of the five children of the testator. The

words "bodily heirs" employed by the testator have a technical, legal meaning as a limited class of the heirs appointed by law to succeed to real estate in case of intestacy, and they are to be given that meaning where there are no words in the will which in any way limit or qualify them. When uncontrolled and unexplained by the context they are to be interpreted according to their technical meaning. (*Ætna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406; *Kepler* v. *Castle,* 281 id. 444.) They are, however, used quite frequently with a different meaning, and the purpose of construction being to ascertain the intention of the testator as expressed in his will, if it is found that the words were used with a different meaning effect will be given to the intention where it does not violate any settled rule of law or principle of public policy. Accordingly it has been found in various cases that the words were employed by the testator as meaning children, and the will has been so construed in order to effectuate his intention. (*Summers* v. *Smith,* 127 Ill. 645; *Smith* v. *Kimbell,* 153 id. 368; *Strain* v. *Sweeny,* 163 id. 603; *Fishback* v. *Joesting,* 183 id. 463; *Gannon* v. *Peterson,* 193 id. 372; *Peterson* v. *Jackson,* 196 id. 40.) If it should be found that Joshua C. Hull used the words "bodily heirs" as meaning children, to so construe his will would not violate any rule of law or of public policy. Public policy, as declared in numerous decisions, dictates that where estates are devised by will they are to be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent on a future event. (*Scofield* v. *Olcott,* 120 Ill. 362; *Hawkins* v. *Bohling,* 168 id. 214.) In this case there are conclusive reasons for saying that the testator used the words "bodily heirs" as descriptive of his grandchildren and that they were used in the same sense and with the same meaning as children. The five children of the testator named in the will were all living and all had children on December 4, 1908, when the will was made, and on March 22, 1913, when

it took effect. A remainder takes effect by succession on the termination of a particular estate, and therefore the remainder limited to the bodily heirs of the testator's children would take effect at the death of the widow and the termination of the life estate, which might, and in a natural course of events would, occur before the death of either of such children. Inasmuch as a living person cannot have heirs, either generally or restricted to lineal descendants, the death of the widow in the lifetime of the children would render any devise of a remainder after the life estate to bodily heirs, in their technical sense, ineffective and void, because there would be no one answering the description of the remainder-men.

It is a universal presumption that the testator intends that his will shall take effect and that he shall not die intestate as to any part or portion of his property. That presumption was given effect in *Strain* v. *Sweeny, supra,* as requiring a construction that the testator used the words "heirs" as meaning children. By his will Joseph Sweeny devised to his son, Dennis S. Sweeny, certain real estate, but in case he should die without issue of his body then the same should go to the heirs of Nelson C. Sweeny. The court, after stating that when the will was made Nelson C. Sweeny had two children, and that one of the established rules for the construction of a will is that a testator is rather to be presumed to calculate on the dispositions of his will taking effect than the contrary, pointed out that if Dennis S. Sweeny should die without issue of his body before Nelson C. Sweeny should die, then, upon the construction of the word "heirs" as having its ordinary technical meaning, the provision that the estate should go to the heirs of Nelson C. Sweeny before the death of the latter would be equivalent to saying that it would go "nowhere" and that the testator calculated upon one of the dispositions of his will failing to take effect. To avoid a construction which would lead to such an absurdity the word

"heirs" was held to mean children. Likewise, to say that Joshua C. Hull intentionally provided that in the case of the termination of the life estate before the death of his children the devise would be void would lead to such an absurdity that he must have used the words "bodily heirs" as meaning children. The fact that the devise over in the case of *Strain* v. *Sweeny* was executory, taking effect by interruption of the devise in fee to Dennis S. Sweeny, while in the present case the testator devised remainders taking effect by succession at the termination of the life estate, is of no importance and can have no effect in determining the intention of the testator. There is a broad and substantial distinction between a devise of a life estate to one with a remainder to his heirs, as in the case of *Ætna Life Ins. Co.* v. *Hoppin, supra,* and other like cases where heirs are ascertained at the termination of the life estate, and the devise to one for life with a limitation of a remainder to the heirs of another, when the life estate might terminate without the designated heirs being ascertained.

Joshua C. Hull by the use of the words "bodily heirs" meant children, and as they were in existence and definitely ascertained when the will took effect, the remainders were vested and the enjoyment, only, postponed to the termination of the life estate. There was no reversion in fee in the heirs of the testator. The grantees in the deed of the widow obtained the life estate and nothing more. The chancellor was right in construing the will and dismissing the original bill for want of equity.

Objection is made by appellants to partition of the remainders, but that does not concern them. They have the life estate and the partition is subject to that estate, which is undisturbed by it. In case of a sale the life estate can not be sold except by their consent.

The decree is affirmed.

*Decree affirmed.*