(No. 16266.—Reversed and remanded.)
OLIVE WOOD, Appellant, *vs.* NELLIE OLMSTEAD CHASE *et al.* Appellees.

*Opinion filed October 22, 1927.*

1. WILLS—*when devise creates contingent remainders*   Where a testator, after giving his wife a life estate, provides that at her death the property shall go to his two children for life with remainders, each, to the heirs of their bodies, provided that if any child dies without heirs of the body his share shall go to the surviving child for life with remainder to the heirs of his body, contingent remainders are created while the children are living, and where one child dies leaving heirs of the body they have no future executory interest in the share of the survivor, who has no children, but their interest therein is by way of reversion.

2. SAME—*what determines whether a remainder is contingent.* A contingent remainder is one limited to take effect either to an uncertain person or upon a dubious and uncertain event, and the uncertainty which distinguishes a contingent remainder is not whether the remainderman will ever enjoy it but whether there will be a right to such enjoyment.

3. SAME—*when act of 1921 applies to prevent destruction of a contingent remainder.* The act of July 2, 1921, is sufficiently comprehensive to apply to any possible contingent remainder, and where a testator creates successive life estates in his wife and two children with remainder to the heirs of the body of the children, after the death of one child leaving heirs of the body a conveyance by the surviving child, who had no children, and by the widow to the same grantee, cannot have the effect of merging the life estates and the reversion, where the widow's deed was not executed until after July 2, 1921, although the other conveyance was made prior thereto.

4. SAME—*act of 1921 preventing destruction of future interests is not invalid.* The act of July 2, 1921, preventing the destruction of future interests by conveyance, is not invalid as divesting vested

property rights, as no one has a vested right in the common law rule or practice permitting such destruction of future interests, and the legislature may abolish the rule in all cases where such interests have not been destroyed before the act took effect.

5. SAME—*when words "surviving child" will not be construed to mean "other child."* The words "surviving child" cannot be interpreted to mean "other child" when the context clearly shows that the meaning is otherwise, and where a testator gives all his real estate to his son and daughter for life with remainders to the heirs of their bodies and with a devise over to the surviving child in case of the death of the other child without heirs of the body, the children of the daughter do not, after her death, have a contingent remainder in the share of the son who survives the daughter but who has no children, as their interest in such share is by way of reversion as descendants of an heir of the testator.

6. STATUTES—*statutes may change common or statutory law.* No person has a vested interest in any rule of the common law or in any enactment of the General Assembly, but the great office of statutes is to remedy defects in the common law and statutory laws as they are developed and to adapt them to the changes of time and circumstances.

7. SAME—*statutes may change contingent and inchoate rights.* Contingent rights arising prior to the enactment of a statute, and inchoate rights which have not been acted on, are subject to legislative control if such rights have not become vested, as in the case of statutes relating to dower, curtesy, homestead, and other statutory estates.

8. PARTITION—*when complainant is entitled to partition of interest in reversion.* Notwithstanding the existence of a contingent remainder, where the contingent remaindermen are unknown and cannot be known until the death of the life tenant under the will and there are no parties purporting to represent the contingent interest, a complainant to whom has been conveyed the life estate and a portion of the reversion in fee is entitled to partition of the life estate and of her interest in the reversion and to have the reversionary interests separated from an undivided portion of the entire estate which has vested on the death of another life tenant.

9. SAME—*general demurrer will not be sustained for failure to correctly set forth interests.* A general demurrer to a bill for partition will not be sustained where the only defect in the bill is the failure to correctly set out the interests of the parties to the suit.

APPEAL from the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

JESSE PEEBLES, and H. R. BUDD, for appellant.

MURPHY & HEMPHILL, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

A. D. Wood died testate in Macoupin county, Illinois, in May, 1920, leaving him surviving Miranda A. Wood as his widow and Charles A. Wood and May E. Olmstead, his children, as his only heirs-at-law. The will of the testator was admitted to probate in the county court of said county, and the probate thereof has never been set aside or modified in any way. By his will the testator provided for the payment of his debts and funeral expenses. He bequeathed all of his personal property to his widow and devised to her a life estate in all of his real estate. He· disposed of the remainder of his real estate by the fourth clause of his will, in this language:

"*Fourth*—At the death of my wife I give and devise to my two children, Charles Arthur Wood and May Elizabeth Olmstead, all of the real estate of which I may die seized, to have and to hold the same for the term of their natural lives only, and at the death of my two children, or either of them, the share of such child so departing this life shall at once vest in the heirs of the body of such deceased child; and should either of my children depart this life leaving no heirs of his or her body surviving him or her, then the interest of such deceased child in said real estate shall go to the survivor of my said children if one be then surviving, such survivor to hold the same for and during the term of his or her natural life, and at his or her death all of said lands shall vest in fee simple in the heirs of the body of such child so surviving."

On January 11, 1921, Charles A. Wood and his wife, Olive Wood, conveyed by deed to Olive Wood an undivided one-half interest in the real estate devised by the fourth clause of the will. On August 29, 1923, Miranda A. Wood,

the surviving widow of A. D. Wood, conveyed by warranty deed all of her interest in said real estate to Olive Wood. Charles A. Wood has no children or descendants of children. May E. Olmstead is now deceased. The date of her death is not stated. At the time of her death she was married and left surviving her five children, to-wit, Nellie O. Chase, Martin W. Olmstead, Cora M. Olmstead, Leland A. Olmstead and Henry C. Olmstead, the last four named being minors.

Olive Wood filed on January 5, 1924, in the circuit court of Macoupin county, a bill for partition, in which she alleged the foregoing facts and made parties defendant to the bill the five children of May E. Olmstead and described the real estate aforesaid devised by the testator. She further alleged that the effect of the two conveyances to her aforesaid, when considered with the language used in the fourth clause of the will, is to vest in her the fee simple title to an undivided one-half part of the real estate and that she is the owner of the same in fee simple, and that the surviving children aforesaid of May E. Olmstead are the owners of the other undivided one-half of said real estate subject to the life estate of the widow, each of said children being the owner of an undivided one-fifth subject to said life estate. The bill, to which are attached copies of the deeds as exhibits, contains the usual prayer for partition. The defendants demurred generally to the bill, and the circuit court sustained the demurrer and dismissed the bill for want of equity. Olive Wood prosecutes this appeal to this court.

Appellant's contention in this court is as set forth in her bill. Appellees contend that they have a vested remainder in fee in the undivided half of the real estate which was devised to their mother for life, subject to the vested life estate of the widow, Miranda A. Wood. They further contend that the interest they had in that portion of the estate devised to Charles A. Wood and the heirs of his

body is a future executory interest, which is indestructible by any action of the parties holding interest therein.

At the death of the testator his widow, under the terms of the will, was vested with an estate for her natural life in all of the land. The two children of the testator were each vested with an estate for life in an undivided half of the lands subject to the life estate of the widow. Appellees, as children of May E. Olmstead, are by the provisions of the will vested with the remainder in fee in the undivided half of the lands devised to their mother subject to the life estate of the widow conveyed by her to appellant, as contended by appellees. Appellant concedes that is so and no further consideration of that question is required.

Appellees' contention that they have an indestructible future executory interest in the undivided half of the lands devised to Charles A. Wood and the heirs of his body can not be sustained. The two decisions cited in support of their contention, *Hickox* v. *Klaholt*, 291 Ill. 544, and *Calvert* v. *Calvert*, 297 id. 22, do not sustain such contention. In the former case this court held that Kate J. Hickox had a vested life estate in the real estate and that a fee in remainder was vested in George C. Hickox, Sarah H. Lawrence and Charles V. Hickox, Jr., her children, and in the absence of a limitation over, the interest of each one of such children at his or her death would descend to his or her heirs-at-law, either lineal or collateral, but in the event of the death of Kate J. Hickox without leaving a child or children or descendants the fee will come to an end and a future estate in fee simple will arise in the survivor or survivors of the testator's three children and they will take as purchasers under the will and not as heirs. The court further held that the devise, being of a fee simple, precluded any remainder, and that the limitation over would only take effect, if at all, as an executory devise, which is a future estate to arise on some specified contingency which required no particular estate to support it and was inde-

structible. In the *Calvert case* this court held that the limitations over in the will of Charles W. Calvert, Sr., in case the life tenants, Martha Bramblett and Charles W. Calvert, Jr., should die leaving surviving them no child or children or descendant or descendants, were future executory interests, which, upon the happening of the contingent events, would arise in abridgment of the vested remainders by their own strength and were indestructible. In that case this court further held that Henley A. Calvert, the third life tenant, had no child at the time of the interchange of the deeds between the three heirs-at-law and Wallace, and for that reason the remainder devised to his children was contingent and destructible and was destroyed by the merger of the life estate of Henley A. Calvert and the reversion in fee. Had Martha Bramblett and Charles W. Calvert, Jr., had no children the remainders limited to their children would have been contingent remainders, as held in the case of the limitation to Henley A. Calvert, and would have been destroyed by merger of the life estates and the reversions in fee.

The devise to Charles A. Wood is one, in substance, of an undivided half of all the real estate of which the testator died seized, for his life, only, with a remainder in fee to the heirs of his body. By the common law, under the rule in *Shelley's case,* he would be seized in fee tail of such undivided half, but under section 6 of the Conveyance act he became seized thereof for the term of his natural life, only, and the remainder in fee absolute would go to the heirs of his body. Such a remainder is contingent because it cannot be determined who will be the heirs of his body. Should a child be born to him the remainder in fee will at once become vested in such child, subject to be opened and to be vested equally in such first born child and any other children born to him. The devise over of this undivided half to May E. Olmstead for life in case she survive him, and at her death to the heirs of her body in fee

simple, was also a contingent remainder. A contingent remainder is one limited to take effect either to a dubious and uncertain person or upon a dubious and uncertain event. The uncertainty which distinguishes a contingent remainder is not the uncertainty whether the remainderman will ever enjoy it, but the uncertainty whether there will be a right to such enjoyment. (*Golladay* v. *Knock,* 235 Ill. 412; *Calvert* v. *Calvert, supra.*) The remainder created by the will as to this undivided half is clearly a contingent remainder, to be determined upon the death of Charles A. Wood, as at that time, under the terms of the will, it would vest in his child or children or the descendants of such child or children surviving him, and in default of such survival the remainder would have vested in his sister for life if she had survived him, and at her death vested in fee simple in the heirs of her body. This contingent remainder was destructible at common law by merger of the life estates supporting it with the reversion in fee. (*Smith* v. *Chester,* 272 Ill. 428; *Furnish* v. *Rogers,* 154 id. 569.) Charles A. Wood and May E. Olmstead, his sister, were vested at the death of the testator with the reversion in fee in this undivided half interest, or of an undivided fourth each in fee of all the lands of which the testator died seized. (*Lewin* v. *Bell,* 285 Ill. 227.) At her death her undivided fourth of the reversion in fee descended to her five children, her only heirs-at-law. (*North* v. *Graham,* 235 Ill. 178; Kales on Estates and Future Interests,— 2d ed.—sec. 382.) As Charles A. Wood was vested with only an undivided fourth of the reversion in fee of all the lands of which the testator died seized, the conveyances to appellant could only have had the effect, at common law and under the former decisions of this court, of vesting in her an undivided fourth of all such real estate in fee and the life estates of the two life tenants, Miranda A. Wood and Charles A. Wood. But under our present statute there could be no destruction of the contingent remainder by

327—7

the conveyances to appellant in January, 1921, and in August, 1923.

An act entitled "An act concerning future interests," was passed by the General Assembly of Illinois and approved July 2, 1921, and is in this language: "No future interests shall fail or be defeated by the determination of any precedent estate or interest prior to the happening of the event or contingency on which the future interest is limited to take effect." This act was in full force and effect on August 29, 1923, the date of the deed of Miranda A. Wood, the surviving widow of the testator. The language in the act is very broad and comprehensive. The English Real Property act of 1845 (8-9 Vic. chap. 106, sec. 8,) provided that any contingent remainder existing after 1844 should be capable of taking effect, "notwithstanding the determination by forfeiture, surrender, or merger, of any preceding estate of freehold, in the same manner in all respects, as if such determination had not happened." That act was not sufficiently broad and comprehensive to apply to a contingent remainder where the preceding estate of freehold terminated from causes other than those mentioned in that act, and it was succeeded by the act of August 2, 1877, (40-41 Vic. chap. 33,) and there seems to be a doubt as to whether or not the provisions of that act are sufficiently broad and comprehensive to prevent the destruction of every possible contingent remainder. (Kales on Estates and Future Interests,—2d ed.— sec. 106.) It appears that the act of the General Assembly is sufficiently broad and comprehensive to apply to any possible contingent remainder. At any rate, we think the provisions of that act undoubtedly apply to the case now in hand, and that by reason of such provisions the deeds to appellant did not have the effect to destroy the contingent remainder. It must be conceded that there was no destruction of the contingent remainder prior to the execution of the deed by the widow to appellant in 1923 by merger of

the life estates and of the reversion in fee, as the life estate of the widow, which was vested in possession, was sufficient to support the contingent remainder whether the other life tenant was living or dead.

The contention of appellant that the statute is invalid because a vested property interest which has been vested by rule of the common law cannot be divested by a legislative act cannot be sustained. No person has a vested interest in any rule of the common law or in any enactment of the General Assembly. The great office of statutes is to remedy defects in the common law and statutory laws as they are developed and to adapt them to the changes of time and circumstances. (*Munn* v. *People of Illinois,* 94 U. S. 113, book 24 L. C. P. Co. Cas. 77; *Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167.) We are aware of no constitutional provision in this State that deprives the General Assembly of the right and power to pass such a law. In *People's Loan and Exchange Bank* v. *Garlington,* 54 S. C. 413, 32 S. E. 513, (a well considered case,) an act similar to ours was held valid and not retrospective in effect, as the destruction of the contingent remainder in that case was not attempted until after the passage of the act forbidding such destruction. The court in that case very properly said that such objection might with equal propriety be made to the changing by statute the limitations to actions at law, and that the only restriction upon the exercise of such power is that the legislature cannot remove a bar which has already been completed. The court also aptly referred to another decision as an analogous case in which the court held that a provision in a will that the executors, after a certain event had happened, should transport all his slaves "to the nearest non-slaveholding State in the United States or to the free colony in Africa," was rendered invalid by an act declaring that every such bequest should be void although passed after the will was executed but before the provisions of the will were performed.

This court has declared in *Cherry* v. *Mighell,* 299 Ill. 415, that the rule of law authorizing the destruction of contingent remainders is not regarded as having its foundation on principles of natural justice. We think that the rule is generally regarded as one that does a greater wrong to the contingent remainderman and to the testator whose will is thus defeated than the denial of it would do to the parties who might desire to defeat such rights, and that there is no reasonable ground for holding that the legislature has denied any natural or vested right to anyone by abolishing the rule in all cases in which such remainders were not destroyed until after the law became effective.

It is generally recognized by the courts of this country, including this court, that contingent rights arising prior to the enactment of a statute, and inchoate rights which have not been acted on, are subject to legislative control if such rights have not become vested, and frequent applications of this rule are found in statutes relating to dower, curtesy, homestead and other statutory estates. (12 Corpus Juris, pp. 955, 961, 962; *McNeer* v. *McNeer,* 142 Ill. 388; *Henson* v. *Moore,* 104 id. 403.) It was simply optional with the widow to convey or refuse to convey her life estate to appellant. She did not do so until after the statute was in full force and effect, and the deed did not have the effect to destroy the contingent remainder.

May E. Olmstead having died, leaving her surviving her brother, Charles A. Wood, and the five children aforesaid as her only heirs, the undivided half of the lands devised to her vested in fee in her children, subject to an estate for the life of Miranda A. Wood. The conditional devise over of this undivided half on the death of May E. Olmstead failed by reason of the fact that she left surviving children. As to the undivided half of the lands devised to Charles A. Wood, the devise or provision in the will that at his death his interests "shall go to the survivor of my said children if one be then surviving, such survivor

to hold the same for and during the term of his or her natural life, and at his or her death all of said lands shall vest in fee simple in the heirs of the body of such child so surviving," must also fail and be declared of no effect. It has no effect to give a life estate to May E. Olmstead, because she did not survive her brother. It has no effect to vest a fee simple title at her death in the heirs of her body, because she will not be surviving at the death of her brother and the heirs of her body at that time will not be "the heirs of the body of such child so surviving." The latter devise is to the heirs of the body of such child so surviving, and appellees will not be, at the death of Charles A. Wood, the heirs of such surviving child because of her previous death. The context of this devise over, in connection with the other provisions of the fourth paragraph of the will, clearly indicates that the devise over should not take effect at all. The words "surviving child" do not mean "other child," as suggested by appellees, but plainly mean a child living at the death of Charles A. Wood. The words "surviving child" cannot be interpreted to mean "other child" when the context clearly shows that the meaning is otherwise, even though such interpretation might lead to the conclusion that the testator died intestate as to a portion of his real estate. *Duryea* v. *Duryea*, 85 Ill. 41.

The vested interests obtained by appellant, by virtue of the deeds aforesaid, in the undivided half of the lands devised to Charles A. Wood, are, first, an estate for the life of the widow, Miranda A. Wood; second, an estate for the life of Charles A. Wood, subject to the life estate aforesaid; and third, a reversion in fee in the undivided half of the undivided half devised to Charles A. Wood for life. Appellees own the other undivided half of the reversion in fee of the lands so devised, which descended to them from their mother. The contingent remainder to the heirs of the body of Charles A. Wood in this undivided

half will vest in his children as they are born, as heretofore
indicated. The owners of the reversion in fee will con-
tinue to be the owners thereof until the contingency afore-
said happens to take it out of them. In case the contin-
gency does not happen, the entire fee of this undivided half
will vest, an undivided half thereof in appellant and her
heirs, or her grantees in case she shall convey the same,
and the other undivided half thereof will vest in appellees
and their heirs, or their grantees in case they shall sell the
same. 1 Fearne on Remainders, sec. 354, *et seq.; Harri-
son* v. *Weatherby,* 180 Ill. 418; *Peterson* v. *Jackson,* 196 id.
40; *Bender* v. *Bender,* 292 id. 358; *Greenfield* v. *Laurit-
son,* 306 id. 279.

By the provisions of section 32 of the Partition act,
where a proceeding has been brought for partition and no
partition can be made, estates for life may be sold with the
rest of the land in case of sale, provided assent in writing
shall be filed for such sale by the life tenants. The appel-
lant in this suit is entitled to partition as to the two rever-
sionary interests in fee and of the life estate of the widow
and the life estate of Charles A. Wood subject to the life
estate of the widow, both of which were conveyed to ap-
pellant and cover the reversionary interest aforesaid. She
is also entitled to have the reversionary interests in fee,
and the life estate of the widow covering the same, sepa-
rated from the undivided half of the entire lands owned
by appellees in fee, and partition of those fee interests if
the same can be made. There can be no partition among
the contingent remaindermen, as they are unknown and
cannot be known until the death of the life tenant, Charles
A. Wood. There are no parties to this suit purporting
to represent them. The demurrer to the bill for partition
was general. The interests of the parties were not cor-
rectly set forth in the bill. We would not, in view of our
former holdings, sustain a general demurrer to a bill for
partition where the only defect in the bill was the failure

to correctly set out the interests of the parties to the suit. *Barr* v. *Barr, 273* Ill. 621.

On the ground, therefore, that the demurrer to the bill was general, and also for the reason that appellant was entitled to partition as above indicated under the general prayer for relief, the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*