(No. 31886.

E. PAUL SPICER, *vs.* FRANK L. Moss *et al.*, Appellees.— (HILAH Moss STEELE *et al.*, Appellants.)

*Opinion filed May 24, 1951.*

GEORGE V. DOLE, of Paris, for appellants Hilah Moss Steele *et al.*; SCHUYLER, RICHERT & STOUGH, of Chicago, and COTTON, MASSEY, ANDERSON & GIBSON, of Paris, (DANIEL M. SCHUYLER, of Chicago, ROBERT F. COTTON, RAYMOND I. MASSEY, and EARL R. ANDERSON, all of Paris, of counsel,) for appellant E. Paul Spicer.

CRAIG & CRAIG, of Mattoon, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellant E. Paul Spicer filed a complaint in the circuit court of Edgar County to remove a cloud from the title to certain land in that county, which he claimed to own. The defendants are the heirs-at-law of William H. Moss, Sr., who died in 1912, and the persons who at the present time are interested in said land either as his heirs or interested under the terms of a deed made by the said William H. Moss, Sr., dated November 27, 1911. The interests of the several parties defendant will be disclosed in the course of the opinion.

The instrument dated November 27, 1911, was a warranty deed from William H. Moss, Sr., and Priscilla Moss, his wife, purporting to convey certain real estate "to

346

Willella Moss Harris and to the heirs of her body if any such heirs survive her; if no heirs of her body survive her then to the heirs of the body of Frank L. Moss." At the time the deed was made William H. Moss, Sr., had a wife, Priscilla; a son, Frank L. Moss; a son, William H. Moss, Jr.; and a daughter, Willella Moss Harris. William H. Moss, Sr., died January 9, 1912. He left a will, which did not affect this land, and which had no residuary clause. His survivors were the widow and the children named above. At that time William H. Moss, Jr., had living daughters, Adda W. Moss and Hilah Moss, now Hilah Moss Steele, and no wife. Frank L. Moss at that time had two children, Louise Moss, now Louise Shoaff, and a son, Clarence C. Moss. The daughter, Willella Moss Harris, at that time had no children, and was thereafter childless. At the present time Louise Shoaff, daughter of Frank L. Moss, has two living children, William Shoaff and Charlotte Shoaf; and Clarence C. Moss, son of Frank L. Moss, at the present time has three children living, Marcia Moss, Larry Moss, and William Moss. William H. Moss, Jr., died January 6, 1913.

After the death of William H. Moss, Jr., Adda W. Moss, his daughter, on December 16, 1916, executed a quit-claim deed for all of her interest in said property to Frank L. Moss. On January 15, 1917, Willella Moss Harris and her husband executed a warranty deed for all of her interest in said real estate to Zada M. Harris, and on January 16, 1917, Zada M. Harris executed a warranty deed for all of her interest in said property to Willella Moss Harris. These deeds were executed for the purpose of destroying the contingent remainders claimed to exist in said property. The reason said deeds were thought to have such effect was that, William H. Moss, Sr., having by said deed of November 27, 1911, left a portion of the interest in said land undisposed of, because of the possibility of a failure of the contingent remainders created

thereby, his death caused a one-third interest in such reversion to vest in Willella Moss Harris, and hence the remainders were destructible by merging her life estate with her share of the reversion fee.

On April 18, 1940, Willella Moss Harris and her husband executed a quitclaim deed to The Edgar County National Bank of Paris, for the same premises, and the bank in turn leased the premises to Willella Moss Harris and her husband until 1990, or until Willella died. On November 21, 1942, the bank quitclaimed the same property to E. Paul Spicer. Willella Moss Harris died in March, 1950, and this suit followed to interpret the deed made by William H. Moss, Sr., and to determine the effect of the various deeds above mentioned. The spouses of the respective persons in interest are made parties, and also Dale Ross, as trustee in a trust deed to secure an unpaid loan on said property made by Clarence C. Moss and wife.

The circuit court decreed that the deed executed by William H. Moss, Sr., in November, 1911, created a life estate in Willella Moss Harris, with a contingent remainder in her issue, and an alternative contingent remainder over to the children of Frank L. Moss; that the deeds made to extinguish the contingent remainders in favor of "the heirs of the body of Frank L. Moss" were ineffective, and that Louise Shoaff and Clarence C. Moss are the owners in fee simple of said real estate, subject to the trust deed in favor of Dale Ross, as trustee, and also continued in effect a receiver to collect the rents and profits and report to the court. This decree necessarily deprived Spicer of his freehold interest in the real estate, and denies the claim that Hilah Moss Steele has a fee in one sixth of the property described in the deed of November 27, 1911.

The controlling point to be decided in the first instance is a proper interpretation of the deed executed by William H. Moss, Sr., in November, 1911, and depending upon

how that deed is construed, the ancillary question of the effect of the deeds made for the purpose of cutting off the future interests arising from the contingent remainders created by the deed of William H. Moss, Sr.

The deed of William H. Moss, Sr., made a grant to Willella Moss Harris, "and to the heirs of her body," and an alternative grant "to the heirs of the body of Frank L. Moss." The words "heirs" and "heirs of the body" have long had a well-settled meaning in real-estate law. They were words by which an estate in fee simple or fee tail was created at common law. While the effect originally given these words has been modified by section 6 of the Conveyances Act, (Ill. Rev. Stat. 1949, chap. 30, par. 5,) the import of their use in deeds of conveyance has not changed. In *Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406, we said: "The word 'heirs' is a technical word having a definite legal signification, and, when un-explained and uncontrolled by the context, must be inter-preted, according to its technical import, as designating the person appointed by law to succeed to the real estate in case of intestacy. Heirs of the body are a limited class of heirs, restricted to lineal descendants. Future estates, unlike present interests, may be limited to persons who are not ascertained or who are not even in existence, provided there is a present particular estate to sustain the re-mainder and the grantee shall be in existence when the time arrives for the enjoyment of the estate. Such an estate is a contingent remainder, and such is the estate limited by the deed now under consideration."

In a case between the same parties, involving the same deed, tried in the Federal Court, a good explanation is given for the effect attributed to the use of the words "heirs" or "heirs of the body," as follows: "Under the English law of primogeniture no ancestor could leave sur-viving him more than one heir. If he left sons, the eldest was his heir. If daughters only, they took as one heir as

coparceners. * * * 'Heirs' could not be taken as descriptive of one person; it could only mean the indefinite succession from generation to generation. * * * 'Heirs of the body,' being usable only to create an estate in tail, could not be descriptive of coexistent persons who on the death of the donee for life could then answer as the heirs of his body, and whose estate would be defined by the added words 'their heirs and assigns' as a remainder in fee simple. * * * But in Illinois, and in this country generally, where the surviving children as tenants in common stand for the surviving eldest son, 'heirs' may have different meanings, just as under English law the singular form 'heir' might have different meanings. If there is no context, 'heirs' must be held to indicate the indefinite succession by inheritance, and Shelley's case applies." (*Aetna Life Ins. Co.* v. *Hoppin,* 214 Fed. 928, C.C.A. 7th. Cir.) The Illinois case was followed, and a great number of decisions from many different jurisdictions were cited, as following the same rule.

Cases giving the same meaning to the words "heirs" or "heirs of the body" are numerous, notable among which are *Coogan* v. *Jones,* 278 Ill. 279; *Sauls* v. *Cox,* 394 Ill. 81; *Bibo* v. *Bibo,* 397 Ill. 505; *Beasley* v. *Beasley,* 404 Ill. 225, all of which involve the construction of deeds. Likewise, the same result was announced in *Lewin* v. *Bell,* 285 Ill. 227, and *Gridley* v. *Gridley,* 399 Ill. 215, where like words were used in wills. This does not by any means exhaust the authorities supporting this generally recognized effect given to the use of such words, and an additional list of cases construing the words "heirs of the body," or "bodily heirs" in like manner will be found cited in the opinion of *Sauls* v. *Cox,* 394 Ill. 81.

The effect at common law of the words "heirs of the body" in a deed or in a will has, however, been altered by section 6 of the Conveyances Act. This section provides, in cases where a fee tail might be created by the grant,

that in place thereof the first grantee shall be deemed to be seized for the natural life only, and the remainder pass to the deferred beneficiaries to whom the estate would fall upon the death of the first grantee in tail, according to the common law, by virtue of such grant. Where the first taker, at the time of the execution of the deed to one and the heirs of his body, has no children, it has been held that the first taker obtains a life estate, and the contingent remainder is to his or her unborn children, if, at the time of the execution of the deed, the grantee has no children. (*Lewin* v. *Bell*, 285 Ill. 227; *Hartwick* v. *Heberling*, 364 Ill. 523.) This principle is so well understood that it is unnecessary to elaborate upon it further.

Therefore, when the deed of November 27, 1911, was executed and delivered to Willella there seems to be no question but that a life estate was vested in her, and a contingent remainder in her unborn issue. However, when Willella died in 1950, she had no issue, and the effect of the alternative grant over to "heirs of the body of Frank L. Moss" was questioned, but undoubtedly, under the above rules, if there had been a particular estate from the death of Willella to that of Frank L. created to support the contingent remainder created thereby, probably no question would have been raised as to the sufficiency of the words to create a contingent remainder in the "heirs of the body of Frank L. Moss." However, the absence of a provision giving Frank L. Moss, or any one else, a life estate to support the contingent remainder to the "heirs of his body" has caused the appellees to urge that this part of the deed of William H. Moss, Sr., should be construed as though the words "heirs of the body" had been written "children;" or, in short, that the words "heirs of the body of Frank L. Moss" should be construed as children of Frank L. Moss, which would cause the estate to vest immediately in the children of Frank L. Moss upon the death without issue of Willella Moss Harris.

The trial court adopted this construction, and that raises the first point that must be decided. The court relied upon the cases of *Seymour v. Bowles,* 172 Ill. 521, and *Morris v. Phillips,* 287 Ill. 633. The deed in the *Seymour case* ran to "Susan Bowles and her minor heirs, and in case of the death of either of the heirs without issue the property right to revert back to the surviving heirs." These words were not equivalent to the words "heirs of the body" since the words "minor heirs," coupled with the context, clearly infer some one who is living, and therefore could only mean minor children who should survive her; while in the *Morris case,* which involved a will, the devise was in the following form: "Unto the heirs of my son William L. Long, * * * during the term of his natural life, I do hereby give and devise," etc. His son William was living, and hence to construe the devise to the heirs of one living was an impossibility and void at common law. (*Duffield v. Duffield,* 268 Ill. 29; *Hull v. Hull,* 286 Ill. 75.) In order to prevent that devise and four others similar to it from failing utterly the court derived the intention from the will that the testator meant children, as it purported to be a present gift and not one indicating indefinite succession. Similar circumstances caused the court in *Hull v. Hull,* 286 Ill. 75, and in *Butler v. Huestis,* 68 Ill. 594, to likewise construe similar words in a will as "children" in order to effectuate the intention of the testator, as disclosed by the instrument. In the *Hull case* the court was moved to so decide because of the presumption that the testator did not intend to die intestate, which would have followed any other construction than considering he meant children.

As limiting cases where such a construction has been given, there are other rules which must be observed. In the first place, the words "heirs of the body" are technical words. In *Beasley v. Beasley,* 404 Ill. 225, which involved a deed granting to "Lettie A. Beasley and her bodley

Heirs," the contention was made that the latter words should be treated as ineffective or meaning children. We said: "There is nothing in the context of the deed before us to indicate that the words 'bodley heirs' should be given a meaning different from what they are generally understood to mean in the law of real property. Where a grantor employs words which have a definite legal significance in the law of real property, it is presumed he intended that such technical words should be given their special signficance unless it appears from the context that he intended they should be given a different meaning. * * * Failure to observe this distinction leads to confusion. [Citation.] * * * We find nothing in the deed justifying such construction. Had the parties intended a fee-simple title to pass *in praesenti,* the word 'children' would no doubt have been used in the place of the word 'heirs,' as one cannot have heirs during his life."

In *Gridley* v. *Gridley,* 399 Ill. 215, we said: "The words 'heirs of the body' have a technical legal meaning as a limited class of heirs restricted to lineal descendants. * * * Such terms have a technical, legal meaning as a limited class of heirs, and when used by a testator are to be given that meaning when there are no words in the will which in any way limit or qualify them." To the same effect is *Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406, and other cases. The rule is well established.

Another rule following the construction of deeds is that if technical words are used in one portion of the instrument they will be also technically interpreted when used in another portion of the instrument. There can be no question in this case that if the deed had been only to Willella Moss Harris and the heirs of her body, it would have been interpreted as creating an estate tail at common law, and where, as here, not only are those words used, but there is the further alternative gift to the heirs of the body of Frank L. Moss, the rule is, and should be, that

they are given the same interpretation. (*Beasley* v. *Beasley,* 404 Ill. 225; *Gridley* v. *Gridley,* 399 Ill. 215.) The court, however, received oral testimony, claimed to support the proposition that by the words "heirs of the body of Frank L. Moss," William H. Moss, Sr., intended the use of the word "children," and that he used such words as meaning children.

In this respect the court was in error. Unless there is an ambiguity or uncertainty in the language of the deed the court is not at liberty to ascertain the intention in any other manner than from the language of the instrument itself. If it is a deed in ordinary form, using technical words, language cannot be imported to take away their technical nature. This principle is well settled. *Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406; *Kozlowski* v. *Mussay,* 395 Ill. 81; *Rockford Trust Co.* v. *Moon,* 370 Ill. 250.

In the *Aetna case* the language in the deed was to "Franklin B. Hoppin and Sarah Hoppin, his wife, for and during their natural lives and for and during the life of the survivor of them, and at the death of the survivor of them to the heirs of the body of the said Sarah Hoppin, their heirs and assigns." In that case an effort was made to construe the language other than according to its technical meaning, and with respect to that language the court said: "There is no ground whatever in this case for saying that the words 'heirs of the body' were intended to have other than their ordinary definite legal meaning, for there are no words in the deed which in any way qualify them." It cites from the case of *Griswold* v. *Hicks,* 132 Ill. 494, in which was quoted with approval from an English case, the following: "Technical words, or words of known legal legal import, must have their legal effect, even though the testator uses inconsistent words, unless these inconsistent words are of such a nature as to make it perfectly clear that the testator did not mean to use the technical words in their proper sense."

In the cases cited by appellees where "heirs" or "heirs of the body" have been construed to mean children, there was something in the instrument which clearly indicated that such was the intention, but when the courts refer to intention it means that intention which is derived from the entire language of the deed, and not from extrinsic testimony. The rule is in our opinion settled beyond question by *Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406; *Knight* v. *Knight,* 367 Ill. 646; and *Sauls* v. *Cox,* 394 Ill. 81. In the recent case of *Bibo* v. *Bibo,* 397 Ill. 505, in disposing of a similar contention, we said: "The doctrine of practical construction applies only to ambiguous wills, and there is no ambiguity in the will of Philip Bibo." We find no words in the deed which indicate the grantor did not use the words in their technical sense, and moreover, we believe that to construe the words "heirs of the body of Frank L. Moss" as meaning children, either from the deed or from oral testimony, would clearly inject something into the deed that the grantor did not intend, for, if these words were so intended to mean children and they were given such effect, William H. Moss, Sr., would have executed an instrument which would prevent the grandchildren of Frank L. Moss from taking any interest whatever in case either or both of his surviving children died, under the rule announced in *Watterson* v. *Thompson,* 404 Ill. 515, and the cases cited therein. Clearly, the grantor had no such intention.

Even though we should regard the testimony offered in this case and bearing upon the question as competent, it would be totally insufficient to take away the technical meaning of the words "heirs of the body." We therefore conclude that the words "heirs of the body" of Willella Moss Harris and Frank L. Moss were used in their technical sense. We might observe that where a grantor or testator uses words having a technical meaning in a deed or will it is not necessary that he append a notice in the

instrument that he is using them in a technical sense. The law presumes that he did so use them, and to construe otherwise the court must be compelled by some other words in the same instrument. Such other words are missing here.

We will now apply the rule to the facts in the case. At the time William H. Moss, Sr., made and executed his deed he created contingent remainders and did not dispose of the possibility that there would be no heirs of the body of Willella Moss Harris or of Frank L. Moss, and he therefore left an expectancy which would revert to his estate and would pass by descent, since he had no residuary clause in his will that would dispose of it. Therefore, when William H. Moss, Sr., died, this reversionary interest passed to his three children, who were all living at the time, *viz.,* one third to Willella Moss Harris; one third to William H. Moss, Jr., and one third to Frank L. Moss. Likewise, when William H. Moss, Jr., died, this reversionary interest in one third of the property conveyed in turn passed to his children, who were Adda W. Moss and Hilah Moss Steele.

For the present, we will consider only that part of the reversion in which Willella became interested. As pointed out, as the heir of William H. Moss, Sr., she took a one-third of the reversion, in case the contingencies did not happen, which would revest the estate in the heirs of William H. Moss, Sr. She likewise had a life estate in the whole of the tract, and, under the authorities, it seems clear that if she had united the entire reversionary interest in the property with her life interest, under the common law these facts would operate to cut off the contingent remainders and vest the property in Wilella in fee simple. This principle was first formally adopted in Illinois in *Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406, and has been followed on many occasions since that time.

It is to be noted, however, that she united with her life estate in the whole tract a one-third of the reversionary

interest which she took as the heir of her father, and it is contended by appellants that there was a fractional vesting in her of one third of the property conveyed to her, by reason of the uniting of the one-third reversionary interest with her life estate in all of it. The doctrine of fractional vesting seems to be upheld in *Lewin* v. *Bell,* 285 Ill. 227; *Fuller* v. *Fuller,* 315 Ill. 214; and *Martin* v. *Karr,* 343 Ill. 296. At any rate, the court did allow the fractional destruction of a contingent remainder in those cases without discussing the reasons for so doing. We see no reason for holding such is not the law, but this becomes immaterial, as will hereafter appear.

Therefore, by the common law the joinder of the one third of the reversionary interest with the life estate would have resulted in Willella becoming the owner in fee of one third of the property originally conveyed to her, and thus destroy the contingent remainders to that extent. Appellees, however, call our attention to the fact that the conveyance by the grantor, William H. Moss, Sr., was by way of warranty deed, and that therefore Willella is estopped by the covenant of warranty contained in that deed, as well as in the covenant of warranty contained in the deed which she and her husband made to Zada M. Harris, and in the deed Zada M. Harris executed back to Willella. Estoppel by warranty deed as effective to prevent merger is sustained by the cases of *Biwer* v. *Martin,* 294 Ill. 488; *Marvin* v. *Donaldson,* 329 Ill. 30. The first of these cases discusses the subject exhaustively, and states the principle in the following language: "By such a deed [warranty] the grantor warrants to the grantee, his heirs and assigns, the possession of the premises and that he will defend the title granted by the terms of the deed against persons who may lawfully claim the same, and that such covenant shall be obligatory upon the grantor, his heirs, personal representatives and assigns. This is true whether the deed conveys a present or future interest. [Citations.]

Since the grantor and his heirs and assigns are not permitted to deny the title which the grantor by his deed conveys but must defend the same, it would seem by all equitable principles that he or they should not be allowed to breach by his or their act the covenants of warranty contained in such deed." This rule was followed in *Marvin* v. *Donaldson,* 329 Ill. 30, and referred to with approval in *Weegans* v. *Karels, Exr.* 374 Ill. 273.

Appellants contend, however, that a later case, *Martin* v. *Karr,* 343 Ill. 296, above cited, has overruled these cases by holding that a contingent remainder created by warranty deed may be destroyed by merger. They base this claim upon the fact that the abstracts in that case, on file in the clerk's office of this court, show that a warranty deed was used under like circumstances, but that the court nevertheless refused to give effect to the estoppel created by such an instrument. We do not believe that this necessarily follows. It will be observed that the *Karr case* was the sixth appeal in a series of cases involving property left by one Collison in Champaign County, the first of which was reported in *Stephens* v. *Collison,* 249 Ill. 225, and the last previous to the *Karr case,* in *Stephens* v. *Collison,* 330 Ill. 48. The litigation was bitterly contested and practically every point was raised and argued in these cases to invalidate certain deeds, including the particular one discussed in the *Karr case.*

Appellees assume that the court, in the *Karr case,* overlooked the two cases invoking the doctrine of estoppel, and appellants contend that it must have intended to overrule them. We cannot acquiesce in either construction. In the last paragraph of the opinion will be found this language: "We do not think there is any estoppel in this case attributable to complainant, as in the former cases Josephus W. [the grantee] had assumed no inconsistent position with relation to the title to the land." The court held there was a contingent remainder originally created, and by reason

of certain deeds made later uniting the particular estate and the remainder, Josephus W. acquired the fee in the property conveyed by the original grantor. We have no means of knowing what points were raised in the five previous cases, or what actions had taken place which might or might not obviate an estoppel, but one thing is quite sure, and that is that the court deemed that no estoppel had taken place by reason of something that had taken place in previous litigation. The reason for this is not found in the opinion, but we must assume it was well founded.

So, under the positive authorities cited above, Willella, as heir of William H. Moss, Sr., has estopped herself from asserting a merger of the life and expectant estate. We conclude, therefore, on this branch of the case that there has been no merger of a one-third part of the estate deeded by William H. Moss, Sr., and that therefore the contingent remainders created by the grantor were not destroyed.

Now, to pursue this matter to its ultimate conclusion. When Willella died in 1950, the life estate which supported the contingent remainder in favor of the heirs of her body, and in favor of the heirs of the body of Frank L. Moss, ceased. It was an inflexible rule of the common law that every remainder required a particular precedent estate to support it, and that a contingent remainder must vest during the continuance of the particular estate, or the instant it determines. If it does not vest at that instant it has perished in accordance with the doctrine that no one can be heir to the living. 2 Blackstone, 168; Gray on Perpetuities, sec. 10; *Bond* v. *Moore,* 236 Ill. 576, and *Duffield* v. *Duffield,* 268 Ill. 29, are a few of the many authorities establishing this almost axiomatic principle.

In this case Frank L. Moss is alive. He has two children living, Louise Shoaff and Clarence C. Moss. Since Frank L. is still living, and was not given a life estate in the property to succeed the life estate of his sister, Willella,

it is contended that this principle must operate to destroy the contingent remainders in the two children of Frank L. Moss. In response to this, appellees contend that the statute concerning future interests (Ill. Rev. Stat. 1949, chap. 30, par. 40,) prevents this result. This statute was enacted for the express purpose of preserving contingent future interests from defeat. It consists of one section, and reads as follows: "That no future interest shall fail or be defeated by the determination of any precedent estate or interest prior to the happening of the event or contingency on which the future interest is limited to take effect." This act was enacted in 1921, and has been construed several times. It is not retroactive, and therefore a proper merging of estates before its enactment has been held to cut off the contingent remainders. (*Edmiston* v. *Donovan*, 300 Ill. 521; *Drager* v. *McIntosh*, 316 Ill. 460; *Danberg* v. *Langman*, 318 Ill. 266; *Hauser* v. *Power*, 356 Ill. 521.) It has also been held that where merger deeds are made after the enactment of the statute, there is no destruction of a contingent remainder by reason of uniting the particular with the reversionary estate. *Jennings* v. *Capen*, 321 Ill. 291; *Wood* v. *Chase*, 327 Ill. 91; *Daubman* v. *Daubman*, 353 Ill. 69.

It is, however, claimed by the appellants that this act is ineffective in the present case because to do so would read something into the original grant which is not there, *viz.*, a life estate to support the contingent remainder. In *Wood* v. *Chase*, 327 Ill. 91, in discussing the breadth of this act, we commented: "It appears that the act of the General Assembly is sufficiently broad and comprehensive to apply to any possible contingent remainder."

It has been suggested that the word "determination" as used in the statute means the affirmative act of some person, and that therefore it does not apply to all terminations of the supporting estate. However, in an English case involving the same statute the word "determination" was

used in the sense of "termination." (18 C.J. 983.) It is also so defined in Bouvier's Law Dictionary and in Webster's New International Dictionary as being synonymous with "coming to an end" or the "end of an estate;" and like effect has been given in *Cramer* v. *Smith,* 350 Mo. 736, 168 S.W. 2d 1039, and this we believe is the sense in which it is used.

It is assumed, because there is no particular estate vested in Frank L. Moss under the language of the deed, that under the law the contingent remainder is defeated and the statute cannot supply this vacancy. We do not think that a life estate in Frank L. Moss is necessary to preserve the contingent estate under this statute. The property is deeded to Willella for life, and the remainder to the heirs of her body; and, in default of heirs of her body, to the heirs of the body of Frank L. Moss. A contingent remainder properly created may be preserved from defeat by the appointment of trustees, or the effect of the rule may be changed by law. (*Jennings* v. *Capen,* 321 Ill. 291; *Wood* v. *Chase,* 327 Ill. 91.) Therefore, if this contingent remainder in the heirs of Frank L. Moss was legal when it was originally made it may be preserved by the statute. It was perfectly legal to create a contingent remainder in the heirs of Frank L. Moss by the deed employed in this case. (*Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406; *Abbott* v. *Abbott,* 189 Ill. 488; *Stoller* v. *Doyle,* 257 Ill. 369; *Campbell* v. *Rawdon,* 18 N. Y. 412.) And since it was legal in the beginning and during the life of Willella, it does not terminate in the present case because the grantor did not provide a second life estate. It is the statute which preserves it because it says no future interest shall fail by the determination of a precedent estate.

It seems to us, therefore, the statute precisely covers the present case and preserves the contingent remainder which would otherwise have been defeated by the death of Willella before it could be ascertained who were the

heirs of the body of Frank L. We therefore hold, that while this remainder would have been defeated at common law by Frank L. Moss surviving Willella Moss Harris, the life tenant, the statute above noted preserves it, and, since the persons who will be the heirs of the body of Frank L. Moss are not yet known and will not be known until his death, the remainder necessarily remains contingent in the heirs of the body of Frank L. Moss.

Hilah Moss Steele claims she is entitled to a one-sixth interest in said real estate as an heir to one half of the share of her deceased father, William H. Moss, Jr. It is her position that the contingent remainder utterly failed by reason of the death of Willella before Frank L. Moss, since there was no intervening particular estate to support it. We have pointed out above why this position is unsound, and how the contingent remainder is supported following the death of Willella by the provisions of the act of 1921 concerning future interests. The reversion in the land following the death of Willella is only for the period measured by the life of Frank L. Moss. The statute does not create or destroy an estate but only preserves the contingent remainder, which is to take effect after the death of Frank L. Moss, and therefore the only present interest that Hilah Moss Steele will take as an heir of one half of her father's estate would be one sixth of the reversionary life estate not disposed of by her grandfather. Of course, if no one coming within the designation "heirs of the body" survives Frank L. Moss, the whole tract would vest in heirs of William H. Moss, Sr., deceased.

It is also asserted by appellants that the conveyance by William H. Moss, Sr., created a perpetuity, and is therefore void. Appellants cite in support of this claim the case of *Corwin v. Rheims,* 390 Ill. 205. This case has been much discussed in legal circles, and its effect misapprehended. The rule against perpetuities as established for many years is that no interest in real estate is good

unless it must vest, if at all, not later than twenty-one years and nine months after some life in being at the creation of the interest. (Gray on Perpetuities, 5th ed. 1915, p. 174; *McKibben* v. *Pioneer Trust & Savings Bank,* 365 Ill. 369; *Thomas* v. *Pullman Trust & Savings Bank,* 371 Ill. 577.) The *Corwin case* does not announce any new rule against perpetuities, nor change or modify the established rule in any respect, and does not purport to do so. The rule, as defined above, is recognized in *Chicago Title and Trust Co.* v. *Shellaberger,* 399 Ill. 320, Gray's classic definition is followed, and *Corwin* v. *Rheims* is cited as supporting it.

If any criticism is directed to the *Corwin case* it should not be based upon the assumption that it has changed or attempted to change the rule against perpetuities, but rather towards its mathematical application to the particular facts and instruments construed. A mistake in this regard would not change the law. It is sufficient to say that the *Corwin case* does not profess to change or modify the rule against perpetuities, nor has it done so.

Reverting, then, to the rule at the time the contested deed was executed, all of the persons who were to defer the ultimate vesting were alive, *viz.,* Willella Moss Harris and Frank L. Moss. The vesting would take place at the instant on the death of the survivor of these two persons. Hence, the rule is not violated, because the fee must vest within the time allowed by it.

Counsel seem to be under the impression that, because there is an hiatus between the death of Willella and that of Frank L., this will require the application of the rule against perpetuities. It is true that under the common law the contingent remainder created by the deed would be defeated, but as we have pointed out above, it is preserved by the act concerning future interests. The rule against perpetuities is not governed by events which may defeat a contingent remainder, but fixes a time limit within which the title in any event must vest. While it is possible that

a contingent remainder may be defeated before the time arrives for it to vest, still, if it is not defeated, and does vest within the lives in being and twenty-one years thereafter, it is good. The time for the vesting of this remainder has not yet arrived, and it may vest in the children of Frank L., or, in case they predecease him, it may vest in someone who could come within the definition of "heirs of the body of Frank L. Moss," or even revert to the heirs of William H. Moss, Sr. But, in any event, that will occur within the allowable time. The position of the appellants in this respect cannot be sustained.

The parties also argue the validity of the mortgage or trust deed made by Clarence C. Moss and Lola L. Moss, his wife, to Dale Ross, as trustee, to secure a loan of money. We do not think this question is properly before us for consideration. There is nothing in the abstract or record that we can discover which shows the language of the trust deed or mortgage. Counsel assume that it contains covenants of warranty which would estop the contingent remainderman from defeating the mortgage. If it were certain that Clarence C. Moss would become vested with the title as contingent remainderman, we might be in a position to discuss the validity of this instrument, but the possibility exists that he may not survive his father, and although the record discloses he now has children, he may not be survived by issue, so it would be fruitless to write a dissertation upon this subject until the party entitled to the fee in the land is placed in the position to assert his rights, whether it be Clarence C. Moss, or his children, or some of the other heirs of William H. Moss, Sr.

A receiver has been appointed to collect the rents and profits of this land pending the determination of the rights of the parties. The right to the possession of this real estate at the present time is not conveyed, because the grantor, William H. Moss, Sr., failed to make provision for the contingency that Willella might die before Frank L.,

and therefore it is still a part of his estate. This undisposed-of portion consists of the use of this land until the ultimate remaindermen become ascertained, and we think the court properly appointed a receiver to collect the rents and profits, pay taxes, and do whatever may be necessary to preserve the property.

Clarence C. Moss, the mortgagor, is the prospective contingent remainderman to one half of the land deeded by his grandfather to Willella, but he has no present right to possession and may never have a right to possession, since the remainder is contingent. The interest in the possession is a part of the reversion which should be disposed of according to the respective interests of those persons disclosed by the record to be presently entitled to it.

We wish to express our appreciation for the very able and scholarly manner in which counsel for both sides have presented the complex rules and complicated problems in this case, and have thus relieved the court of a large part of the task of searching for and applying the cases which we think control the correct result.

It is our opinion that the decree of the circuit court of Edgar County, in so far as it provides that the deeds made to extinguish the contingent remainders are ineffective and in appointing the receiver, should be and it is affirmed, but in all other respects the decree, except as to Dale Ross, trustee, is reversed, and the cause is remanded with directions that a decree be entered consistent with this opinion, and that as to Dale Ross, trustee, the court may dismiss him from the case without prejudice, or hold the case on the docket to ascertain further facts which may or may not affect the validity of the trust deed to Dale Ross, trustee.

*Affirmed in part and reversed in part,*
*and remanded, with directions.*